## Case No. 15,879.

### UNITED STATES v. NICOLL et al.

[1 Paine, 646.] ¹

Circuit Court, D. New York. Oct. Term, 1826.

GOVERNMENT PROPERTY — POWER TO SELL — AFFIRMANCE OF TORTIOUS SALE.

1. Under the 3d section of the 4th article of the constitution of the United States, no property belonging to the United States can be disposed of except by the authority of an act of congress.

2. The war department has no authority. express or implied, to sell the public property put under its management and superintendence; nor is any such power vested in the treasury department.

[Cited in U. S. v. Ames, Case No. 14,441.]

3. A commandant of an arsenal of the United States sold a quantity of lead, belonging to the United States and placed in the arsenal, to the defendants, but afterwards, by a fraudulent collusion with the defendants, converted the sale into a loan of the lead to a third person, who was in a few months to return it to the arsenal, the defendants guaranteeing its return. On a suit by the United States for the price of the lead, held,—that the commandant was a mere agent for safe keeping, and that the sale by him was a tortious act, and the subsequent loan void; but that as no agent or department of the United States had power to sell originally, they could have no power to waive the tort and affirm the sale for the United States, as in cases of individuals; and that as the treasury department had no such authority to sell, their directing the suit to be commenced was not an affirmance of the sale.

R. Tillotson. for plaintiffs.

T. A. Emmet and C. Graham, for defendants.

THOMPSON, Circuit Justice. This is an action of assumpsit [against Francis H. Nicoll and others] for goods sold and delivered. Upon the trial of the cause several exceptions were taken, on the part of the defendants, to the charge of the court to the jury, and a bill of exceptions was duly sealed. A verdict was found for the plaintiffs. No judgment, however, has been entered upon the verdict, and a motion is now made for a new trial, considering the bill of exceptions in the nature of a case made for that purpose. In the view which I have taken of the present motion, it will be unnecessary for me to notice very particularly the facts which appeared upon the trial. It is sufficient to state, generally, that the property in question consisted of a quantity of lead, belonging to the United States, and placed in the arsenal in this city, then being under the command of Captain Edward Tyler. In August, 1815, Captain Tyler sold the lead to the defendants for six thousand two hundred and twelve dollars sixty-four cents, for which they gave their note payable sixty days after date. In October, of the same year, by the procurement of the defendants, this sale was converted into a loan of the lead, by Captain Tyler to George W. Murray, to be returned by the 1st of March then next; and which return was guaranteed by the defendants. For which change of the transaction Captain Tyler, by arrangement between him, George W. Murray, and the defendants, received for his own benefit one dollar on each hundred weight of the lead; amounting to about five hundred and sixty dollars.

The jury were instructed by the court, that as no evidence had been offered touching the authority of Captain Tyler to sell the lead, his powers in this respect must be governed by his legal authority, growing out of the situation in which he was placed. That, as commander of the arsenal, he had no right to sell the public property. That he was a mere agent for safe keeping; and that in selling the lead, he violated his duty and transcended the authority with which the law had clothed him. But admitting him to have been an agent to sell, this would not imply a right to loan; and if the sale was valid. Captain Tyler could not rescind it and convert it into a loan.

---

¹ [Reported by Elijah Paine, Jr., Esq.]

The sale having been made, his powers were at an end, and his subsequent conduct in converting it into a loan to George W. Murray was without authority and void. So that neither the defendants by the sale, nor Murray by the loan, acquired any legal right in the property, and the title still remained in the United States. But that the plaintiffs had a right to waive these tortious acts, and confirm the sale, and bring an action for goods sold and delivered. That they were not bound to bring the action upon the note: It was not a sale for the note of a third person. And where goods are sold, and a note given by the purchaser for the consideration, the seller may bring his action upon the original sale, when the rights of third persons are not involved, and the note is brought into court and cancelled upon the trial. And the note in this case having been delivered up to the defendants, no objection lay to the present action on that ground. It was submitted to the jury to decide from the evidence, whether the defendants were chargeable with a fraudulent collusion with Captain Tyler; with instructions, that if they should be of opinion that they were not. then the defendants were entitled to a verdict; but if they were, a verdict ought to be found against them; that the bringing of this suit for goods sold and delivered, was a ratification of the sale made by Captain Tyler to the defendants; and that in cases of this kind there was no distinction between the United States and individuals.

These are briefly the points upon which exceptions were taken, and which have been argued upon the present motion for a new trial. But the conclusion to which I have arrived, renders it unnecessary for me to notice any of them, except the last branch of the instructions to the jury. It may not, however, be improper for me to observe, that I have examined all the other points presented, and am confirmed in the view taken of them upon the trial: and which, under the finding of the jury, would establish the plaintiff's right of recovery, if there was no impediment growing out of the form of the action. The merits of the case being clearly with the verdict, I have examined this question with a strong desire to surmount the difficulty, but have not been able to sanction the doctrine laid down at the trial, without violating what I deem to be an important principle in the administration of the government, with respect to the disposition of public property. That Captain Tyler was a mere agent for safe keeping, and without authority to sell the lead in question, cannot be doubted. As between individuals, where an agent wrongfully, and in violation of his authority, sells the goods of his principal, the principal may affirm the act of his agent, waive the tort, and maintain an action of assumpsit for goods sold and delivered. But the affirmance of the act, in such case, is by the party who is owner of the property, and has the absolute right to sell; and his subsequent ratification of the act of his agent

is equivalent to an original authority to sell. But that principle cannot be brought to bear on the present case. The lead being the property of the United States, nothing short of the authority of an act of congress would justify its sale originally. And it would require the like authority to ratify the unauthorized conduct of the agent, and convert his tortious acts into a sale of the lead. This grows out of our constitution, and the organization of the different departments of the government.

The constitution declares (article 4, § 3) "that congress shall have power to dispose of, and make all needful rules and regulations respecting the territory, and other property belonging to the United States." No public property can therefore be disposed of without the authority of law, either by an express act of congress for that purpose, or by giving the authority to some department of the government, or subordinate agent. No law has been shown authorizing the sale of this lead. Nor is any such authority to be inferred from the general powers vested in any of the departments of the government. This power, if lodged any where, would seem most appropriately to belong to the war department. But there is no such express or implied power in that department, to sell the public property put under its management and superintendence; and there is nothing contained in any of the laws regulating the ordnance department, which in the least countenances the right of selling or loaning the public property. See Acts 14th May, 1812, and 8th Feb., 1815 (4 Laws U. S. 430, 792 [2 Stat. 732; 3 Stat. 203]). But the case furnishes no evidence whatever that this sale has been ratified or approved by the war department, or any other branch of the government, except what is to be inferred from the mere act of bringing the present suit for goods sold and delivered. If the principle I have laid down be correct (and I think it cannot be denied), that no one can ratify the act of the agent in such case, and convert his tortious disposition of the property into a legal sale, except he who had the right to sell, it will necessarily follow, that the simple act of bringing an action for goods sold and delivered, will not amount to such ratification. Such suits are brought under the direction of the treasury department; but that department has no right to sell public property without the authority of an act of congress for that purpose

By the act of the 3d March, 1817 (section 10, 6 Laws U. S. 201 [3 Stat. 366]), it is made the duty of the first comptroller to superintend the recovery of all debts due to the United States, and to direct suits, and legal proceedings, and to take all such measures as may be authorized by the laws, to enforce prompt payment of all debts to the United States. By the act of 15th May, 1820 (6 Laws U. S. 520 [3 Stat. 592]), this duty is transferred to another officer. The president is authorized to designate some officer of the treasury department, as agent of the treas-

ury, whose duty it shall be to direct and superintend all orders, suits, or proceedings in law or equity, for the recovery of money, chattels, lands, tenements, or hereditaments, in the name, and for the use of the United States. By no possible construction, however, can this authority be converted into a power to sell and transfer public property. It is the mere right of superintending suits, and enforcing the claims and demands of the United States, as he shall find them. Nor is it to be inferred, that the United States have ratified this sale, from the circumstance that the suit is brought by the district attorney, who is a public officer of the United States. By the last mentioned act (section 7), he is required in the prosecution of all suits, to conform to the directions and instructions of the agent of the treasury. Our government being a government of laws, it speaks to its agents through its laws; and it is to them only that we are to look for the authority of such agents. And no law having been shown authorizing the sale of the lead in question, or vesting in any department of the government any general authority to sell public property, no such sale can be inferred from any of the circumstances appearing in this case. And an action of assumpsit for goods sold and delivered cannot be maintained. The verdict must therefore be set aside.