OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
This suit was brought on the 8th of July, 1874. In February and December, 1876, each, a motion was made by the defendants to dismiss it, but no action was had on either motion. February 20,1878, a third motion to dismiss was made, and, on the 4th of the succeeding month, allowed. Up to that time no stejJ had been taken by the claim ants to substantiate their claim.
May 20, 1878, the claimants moved the court to reinstate the case on the docket, and on the 29th of that month the motion was allowed, and, with the consent of the claimants, it was ordered that the case should be set for hearing on the 2d of December, 1878, when, if not ready for trial, it should be dismissed.
On the 24th of February, 1879, though in the previous December depositions on behalf of the claimants had been filed, the case was again dismissed for want of prosecution.
Just four years after this second dismissal, the present motion to reinstate the case was filed. In support of it there is presented an affidavit of one of the claimants, setting forth reasons why the case had not before been duly prosecuted, and stating his belief that if it should be reinstated he will within sixty days be able to make the necessary proof and establish the demand.
Under a motion of this description the main question is whether the claimant’s petition, assuming all its allegations to be true, shows a right in the,claimant to recover something from the Government. If it does, then the subordinate question is presented, whether the claimant’s neglect to prosecute his case is so explained and excused as to justify the court in reinstating the case, and giving him opportunity to prove his claim.
As the decision of the latter question rests much in the dis *354 cretion of the court, we have been accustomed to show a liberality in setting aside dismissals, such as, we suppose, lias not been exhibited by any court in the country toward plaintiffs nonsuited for failing to prosecute their cases. We, however, do not recall any instance where we have set aside such a dismissal, unless the claimant’s petition, if taken to be true, disclosed a cause of action. But we have refused to set aside a dismissal where an examination of the petition showed that, admittingall its allegations, the claimant had nocase. (Garcia’s Case, 14 C.Cls. R., 121; Whitney’s Case, ante, 19.) Hence in any case of this description, the main question, as we have said, is as to the sufficiency of the petition for any recovery whatever. If no recovery could be had under it, it would be useless to restore the case to the docket.
We have examined the petition in this case, and find it to be, in substance, as follows:
On the 18th of September, 1851, one Hugh Stephenson, sr., and wife executed a paper, of which the following is alleged to be a copy:
County or En Paso,

State of Texas:

Know all men by these presents, that we, Hugh Stephenson and Maria Juana, his wife, their executors, administrators, or assigns, do hereby, for the consideration and award hereafter to be specified, lease and grant to the Government of the United States, for the period of twenty years from date, the exclusive right and free and undisturbed possession and use of the lands, woods, and waters comprised in one mile square, the same being situated' and bounded as follows, viz: The northern, or northeastern, or uttermost line of said mile square to run one mile along the main road leading from the town of Doha Ana, New Mexico, to El Paso, Texas, as is now made, as the base of said mile square, the lines on either side of which to run perpendicular to said base or road; and the line in the bottom toward the river to run paralled to the base line or road as aforesaid with the land intervening from said square mile to the river, together with five hundred yards deep •upland on the north side or base line of said square mile. The same being .a portion of the grant of land called and known as “Bracito,” on the Rio Grande or Del Norte, about fifteen or twenty miles from Doña Ana, New Mbxico, as in us vested, for the object of erecting a fort or fortification, or •quarters for troops, as the Government deems proper, which, so soon as may fi>e abandoned as a military post within the term above specified reverts back to the lessors, with all improvements that may be thereon made, and this we grant to the Government of the United States for and in consideration of the sum annually to be paid to said lessors of ten cents, together with the protection afforded by being thus occui>ied as a military post.
*355 Provided further, that on the expiration of said lease of twenty years, all improvements whatsoever, made hy the Government of the United States or its agents, revert to the lessors, their executors, administrators, or assig'ns, ■provided no other bargain is made hy the lessors and lessees.
whereof we hereunto set our seals and signs our names this eighteenth day of September, in the year of our Lord one thousand eight hun-dred and fifty-one, at the place above specified.
Hugh Stephenson, [l. s.]
JUANA STEPHENSON, his wife. [L. S.]
July 22,1859, said Hugh Stephenson, sr., made a deed of gift of the land described in this paper to his children, the claimants.
erected on the land certain buildings for officers’ quarters, quarters for troops, hospital, quartermaster and commissary store-houses, and other ■buildings, of the value of $241,940, all of which made up a ■military post called “Fort Fillmore,” which the Government occupied up to March 5,1863; when, without giving the claimants notice of any purpose to abandon said post prior to the expiration of the above lease, it did abandon it, and removed the .greater portion of the material used in constructing “Fort Fillmore,” and made use of the same in building “Fort West,” and-an the erection of buildings, corrals, &c., in Las Cruces and Mesilla, N. Mex.
claimants demand judgment for the alleged value of the .buildings, &c., put by the Government on the land, $241,940.
petition show a cause of action? In our opinion it “does not.
It will be noticed that the paper called a lease is not signed by any one on behalf of the United States; nor is it alleged •that any person had any authority from the Government to ■negotiate, agree upon, or execute any such lease. But waving ■all questions of this hind, or even resolving them all in favor of the claimants, there is another one thar cannot be waived, .and by it the claimants’ case must stand or fall.
Supposing the lease to have been executed by an officer or •agent of the Government, whence came the authority of any ■such to stipulate that at the end of the demised term, or when•ever before that time the Government should abandon the de.mised premises, all the improvements made thereon by the «Government should revert to the lessor? To ash this question *356 is to answer it. No sucb authority exists, or could ever have-existed, in any officer or agent of the Government, except under an act of Congress; for it is only Congress that can authorize the alienation of Government property. (United States v. Nicoll, 1 Paine, 646.) It is needless to say that there is no pretense that any such act authorized this provision in the so-called lease. The provision is therefore a sheer nullity; andasthe whole case rests upon it, it follows that it rests upon nothing, and therefore can have no sort of standing in this court, if we should reinstate it on the docket. The motion to reinstate-it is therefore overruled.