## *ABRAHAM JOHNSON v. EDGAR G. FRISBIE. 76

### Decided June 12th, 1868.

PERSONAL PROPERTY ; TRANSFER OF TITLE ; POWER OF PUBLIC OFFICERS ; AUTHORITY OF AGENTS ; ESTOPPEL.

A., an officer of the United States Army, took a horse belonging to the Government, and having had the brand removed, used him as his individual property for some time, and then sold him to B., who for nearly a year hired him out as a public livery horse to parties, both civil and military, in the City of Baltimore. No steps were taken during this time by any agent of the United States Government, to recover the horse. B. finally sold the horse to C., and shortly thereafter he was taken out of his possession under an order of the Assistant Provost Marshal as the property of the United States Government. In an action against B., by the last purchaser, to recover what he had paid for the horse, it was *Held:*

That the Government was not estopped from reclaiming the horse as its property. (a)                                          p. 83

Persons dealing with agents or officers in regard to public property, are bound to know the extent of their authority. (b)          p. 83

The bare possession of the horse by A., with the consent of the officers of the Government and the sale by him to B., were not sufficient to pass title to the purchaser.                                p. 83

Although A. may have obtained possession of the horse from the Quarter-master, and B. may have been a *bona fide* purchaser, a sale thus made, without the authority or assent of the Government, could not operate as a transfer of title against the latter. (c)        p. 84

Appeal from the Court of Common Pleas.

This action was brought by the appellee, against the appel-

---

(a)   As to estoppel *in pais*, see cases cited in *Shipley v. Fox*, 69 Md. 579; see also *Albert v. Savings Bank*, 2 Md. 160, cases cited, *after* note (e), but which should have been added to note (d).

(b)   Cf. also *Baltimore v. Eschbach*, 18 Md. 276, cases cited in note (d).

(c)   The principle of *markets overt*, has never been recognized in this State; see *Levi v. Booth*, 58 Md. 305; *Browning v. Magill*, 2 H. & J. 269. But if the real owner of goods has so acted as to clothe the person in possession with apparent authority to sell or pledge, he will be precluded from denying, as against those who may have acted *bona fide* on the faith of that apparent authority, that he had given such authority; *Levi v. Booth*, 58 Md. 305; *cf.* also *Dias v. Chickering*, 64 Md. 348.

lant, for a breach of warranty of title in the sale of a horse, and to recover the value of the same. At the trial below, it was shown by the evidence that the appellee had purchased the horse in question from the appellant, for the sum of one hundred and twenty dollars in cash, and a pony, for which the appellee had paid sixty dollars, and that said horse so purchased, was seized and taken away from the appellee on a written order, signed by Captain French, Assistant Provost *Marshal, stationed in the city of Baltimore, on the ground that it was Government property unlawfully appropriated and sold by a certain Col. Fish, who had previously occupied the position of Provost Marshal in the City of Baltimore. It was further proven that the horse was originally with a lot of others, all branded U. S., sent by the Government to the camp of the 1st Connecticut cavalry, at Hall's farm, Virginia. Col. Fish, then in command of that troop, took the horse and rode him and brought him to Baltimore, when the regiment was ordered there. He kept him in the regimental stable with the other horses of the regiment, paying no bills for him. He then put him, privately, somewhere in Baltimore, and his ostler was seen with the horse with the brand in process of being taken off by acid ; the marks of acid and the eating off of the hair being plainly visible. At that time Fish was Provost Marshal ; shortly after the horse was thus seen, Col. Fish sent him to a livery stable, in Baltimore, and there the appellant bought him, the brand being so removed that it was not apparent. The horse was kept in Col. Fish's stable, or some place other than the regimental stable where he had at first been, until the hair on him had grown out again.

About the time the horse was seized by the Government, Col. Fish had been arrested, and an officer sent from Washington to investigate Col. Fish's case, gave the primary order on which the horse was seized, which was about ten months after Fish sold him to Johnson. It was also proved that officers sometimes used branded horses belonging to the Government as a matter of necessity, but they were bound to furnish their own horses ; that no one had a right to remove a brand. That if the Government sold a branded horse, they did not remove the brand, but if sold sound, they put the additional brand of " G ; " if sold condemned, the additional brand of " I. C.," that officers'

horses were not branded ; if officers bought horses from the Government, they got a certificate from the Quarter-master,— that the appellant bought the *horse from Col. Fish, **78** while at a livery and sale stable, and kept him for a hiring horse ; and had never discovered any mark or brand on him ; that officers stationed in Baltimore, in 1863, had frequently hired the horse, and he was called the " Fish " horse.

First Exception.—An order for the capture of the horse, in question, purporting to have been signed by Captain French, the Assistant Provost Marshal of Baltimore, was offered in evidence by the plaintiff ; the witness to whom it was shown could not prove the signature thereto, and knew nothing of its contents. The defendant objected to the admissibility of the paper. The court permitted the paper to be read as evidence of the surrender of the horse in question by the plaintiff to the Government officer, but held that its contents, so far as the facts recited in it were concerned, were not testimony. To this ruling the defendant excepted.

Second Exception.—Captain French, a witness produced by the plaintiff, testified that he was Assistant Provost Marshal at the time the order was given to take the " Fish " horse ; that he signed the order, but knew nothing of the facts set out in the order. The order was thereupon again offered to the jury as evidence, and the defendant objected. The court overruled the objection and allowed the paper to be read to the jury as evidence. To this ruling of the court the defendant excepted.

Third Exception.—A witness for the plaintiff testified among other things that the Quarter-master attached to the regiment of which Fish was Colonel, knew that he (Fish) had the horse in question. The counsel for the defendant asked this witness, whether during the time that Col. Fish rode this horse at Hall's farm and at Baltimore, he openly claimed him as his property ? The counsel for the plaintiff objected to this question on the ground that Col. Fish's claim to the horse could not affect the rights of the plaintiff. The defendant offered the testimony, to show that Col. Fish was permitted by the Quarter-master to have and claim the horse, *and thereby to deceive and **79** defraud third parties dealing with him ; and also to show that by consenting to, and acquiescing in the claim of Fish, to the horse, even if not well founded, the Government was estopped

from setting up a claim against a third party, a *bona fide* purchaser. The court sustained the objection and would not permit the question to be answered. To this ruling the defendant excepted.

Fourth Exception.—The plaintiff offered the following prayer which the court granted :

· If the jury shall find from the evidence, that the plaintiff purchased of the defendant the horse called " Dandy," spoken of in the evidence, and that as the price of said horse, he gave to the defendant another horse and a sum of money in cash, and that at the time of such purchase by the plaintiff, the said horse was in the possession of the defendant and was sold by him as his property, and not as agent for any one else ; and shall find that the said sale was for a fair price, and that afterwards, the said horse was taken from the plaintiff in the manner given in the evidence, and has ever since been retained from him by the United States, as the property of the United States ; and shall further find, that at the time of such sale, the said horse was not the property of the defendant, but was the property of the United States ; and shall further find, that the plaintiff, at the time of purchasing said horse, supposed the same to be the property of the defendant, then the plaintiff is entitled to recover the value of the horse given by him to the defendant in exchange, and the money paid by him to the defendant, although the jury may believe from the evidence that the defendant, at the time of such sale, did not know the horse to be the property of the United States, and was not guilty of actual deceit.

And the defendant then asked the court to instruct the jury as follows:

1. That in order to entitle the plaintiff to recover in this case, he must prove beyond any reasonable doubt, that Col. Fish, from whom the defendant purchased the horse in ques-**80** *tion, did not, before the said purchase, acquire the possession of the said horse by and with the consent of the officer or officers of the United States, competent to give such consent.

2. That if they find the horse in question, was procured by Col. Fish, the defendant's vendor, from a Quarter-master of the United States army, and that it was the duty of such Quarter-master to charge said horse when obtained, (if they

find he was so obtained,) to Col. Fish, as the officer having obtained the same, and that Col. Fish having obtained such possession, the defendant purchased him fairly and *bona fide* from said Fish, in such case the defendant acquired a good title to the horse, and transmitted it to the plaintiff, and the plaintiff cannot recover.

3. That if they find from the evidence, that the defendant purchased the horse in question from Col. Fish fairly and *bona fide*, without any notice of any fraud on the part of said Fish, then the said defendant acquired a good title to the said horse, unless they further find, that Col. Fish stole the said horse or obtained possession of him by such means as would amount to a felony at common law, even though they should find that Col. Fish got the horse into his possession by fraud and false pretenses not amounting to the felony aforesaid ; and if the defendant acquired such title, the plaintiff cannot recover. This instruction the court refused to give.

To this refusal as well as to the granting of the plaintiff's prayer, the defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before Stewart, Brent, Miller and Robinson, JJ.

*J. Alexander Preston* and *William H. Cowan,* for the appellant:

If an agent of the Government allowed Fish openly to use and sell property belonging to the Government, as his own, *and thereby defraud innocent parties, the Government **81** should be estopped by the act of its own agent, acting within the scope of his authority, from claiming this property, for which a fair price had been paid in good faith by an innocent third party. If the Government were defrauded by Col. Fish, it was through the fault of its own agents.   1 Greenl. Ev. sec. 207 ; *Tongue v. Nutwell,* 17 Md. 212.

When one of two innocent persons must suffer by the fraud of a third party, the loss should fall upon him who has enabled such third party to do the wrong. *Lupin v. Marie,* 2 Paige, 172 ; *Hall v. Hinks,* 21 Md. 406 ; *Powell v. Bradlee,* 9 G. & J. 220.

In the sale of chattels, the Government occupied no better position than a private individual, so far as concerns the vesting

of a title in a *bona fide* purchaser. *Baltimore v. Reynolds*, 20 Md. 1-5.

The following authorities are referred to in support of the appellant's third prayer: *Hall v. Hinks*, 21 Md. 406, 419; *Malcom v. Loveridge*, 13 Barb. 372; *Keyser v. Harbeck*, 3 Duer, 373; *White v. Garden*, 5 E. L. & Eq. 379; *Jennings v. Gage*, 13 Ill. 610; *Williams v. Given*, 6 Grattan, 268; *Acker v. Campbell*, 23 Wend. 372; *Kingsford v. Merry*, 24 E. L. & Eq. 607; *Titcomb v. Wood*, 38 Maine, 561.

*A. Stirling, Jr.*, for the appellee:

The ruling of the court below, in granting the prayer of the appellee, was correct, for there is an implied warranty of title on the sale of personal property, sold by the vendor as his own, and not as agent, for a fair price, and which is in his possession at the time of sale ; and if the property were passed to the vendor by a person who had no title and no right to sell to the vendor of the plaintiff, and the property is taken by the true owner, the vendee has a right to recover the price paid. *Giese v. Thomas*, 7 H. & J. 458; *Mockbee v. Gardner*, 2 H. & G. 176; **82** *Osgood v. Lewis*, 2 H. & G. 520; *Rew *v. Barber*, 3 Cow. 272; *Dresser v. Ainsworth*, 9 Bar. 619; *Long v. Hickingbottom*, 28 Miss. 772; *Scranton v. Clark*, 39 Barb. 273; *Bonita v. Mosquera*, 2 Bosworth, (N. Y.) 401; *Eiwetz v. Clark*, 4 Am. Law Reg. 478 ; *Wilson v. Nason*, 4 Bosworth, 155, 168 ; *Covill v. Hill*, 4 Denio, 323.

More clearly than in the case of a private master, the United States, representing the people or public, are not bound or estopped by the improper acts ot one officer consenting or winking at the unauthorized acts of other officers ; and it is settled law that persons dealing with public officers are bound to know the extent of their authority in the matter in which they deal; and the fact that a public officer fraudulently erases the marks on public property and sells it to a vendee, who is ignorant of his fraud, does not estop or defeat the title of the public. 2 Paine, C. C. 68; *Lee v. Munroe*, 7 Cranch, 366; *United States v. Nicoll*, 1 Paine, 646; *Baltimore v. Reynolds*, 20 Md. 1; *Eschbach v. Baltimore*, 18 Md. 276; *State v. Graves*, 19 Md. 351.

And in the case of public property belonging to the United States, where the mode of disposal and sale is regulated by law,

the fact of a person being in possession of what is shown to have been public property at the time of acquisition of possession is no proof of title in such possessor ; but the possession is that of the public, unless proof is given of a legal transfer of title to him by the proper authorities.

Robinson, J., delivered the opinion of the court.

The question presented in the first bill of exceptions, it is unnecessary to decide. The objection to the admissibility of the paper, purporting to be an order, signed by French, Assistant Provost Marshal, on the ground that no evidence had been offered of its authentication, is fully answered by the proof in the second bill of exceptions. The execution of the order by French, and its delivery to the witness Dale, with directions to go to the stable of the appellee and take *possession of **83** the horse, being proven, we think it was admissible in evidence, to explain how and under what circumstances, the horse was surrendered to the authorities of the United States. We concur therefore with the ruling of the court in the second bill of exceptions.

The declarations of Fish, under whom the appellant claimed title, were clearly inadmissible. They were declarations of a party in his own interests, not made in the presence of any one authorized by the Government to assent, acquiesce in or disavow the same. The doctrine of *estoppel in pais,* so confidently relied on by the counsel for the appellant, stands upon the broad grounds of public policy and good faith; it is interposed to prevent injustice and to guard against fraud, by denying to a party the right to repudiate his admissions, when they have been acted upon by persons to whom they were directed, and whose conduct they were intended to influence. *Alexander v. Walter,* 8 Gill, 239. There is not a particle of evidence, to show that the Government ever assented to or permitted any one to act upon the declarations of Fish; and to hold under such circumstances, that the Government is to be estopped from reclaiming its property, would be to carry the doctrine to an extent, not warranted by any authority and in violation of every principle of public policy and public justice. The law prescribes how and in what manner the public property is to be

sold, and it is well established, that persons dealing with agents or officers in regard thereto, are bound to know the extent of their authority. *United States v. Nicoll,* 1 Paine, 646; *Delafield v. Illinois,* 26 Wend. 192; *Baltimore v. Reynolds,* 20 Md. 1.

We concur also with the court in refusing the defendant's first prayer. It is based upon the theory, that the bare possession of the horse by Fish, with the consent of the officers of the Government, and sale by him to the appellant, were sufficient to pass title to the purchaser. That no one can transfer to another, a better title than he has himself, is a *maxim, says Chancellor Kent, " alike of the common and the civil law, and a sale *ex ri termini* imports nothing more, than that the *bona fide* purchaser succeeds to the rights of the vendor." The exceptions to this general principle in regard to the sale of personal property, as for instance sales by consignees,—or by persons into whose custody goods are put and whose common business, it is to sell,—or the possession of money, or bills payable to bearer, where possession carries with it the property, and other exceptions not necessary here to enumerate, do not embrace the case now before us.

The second prayer is liable to the same objection. Fish may have obtained possession of the horse from " the *Quartermaster,*" and the appellant may have been a *bona fide* purchaser, but a sale thus made, without the authority or assent of the Government, could not operate as a transfer of title against the latter. The record shows that officers in the discharge of their military duties, were permitted of necessity to use horses belonging to the Government, and such use and possession, with or without the consent of the Government, conferred no power, expressly or by implication, to sell and dispose of the same, in fraud of the rights of the United States.

The third prayer is yet more objectionable. It required the jury to find title in the appellant, unless they should believe that Fish obtained possession of the horse, by some such means as would amount to felony at common law. No authority was offered in support of this proposition, and we know of no principle upon which it can be sustained.

Concurring therefore with the rulings of the court below, we affirm the judgment.

*Judgment affirmed.*