THOMAS LISTER and WILLIAM F. SUPPLEE, trading as LISTER & SUPPLEE, *vs.* EMELINE ALLEN, use in part of DANIEL RATCLIFFE.

*Agency—What acts of the Agent bind the Principal.*

If an agent is appointed only for a particular purpose, and is invested with limited powers, or, in other words, a special agent, then it is the duty of persons dealing with such agent to ascertain the extent of his authority, and the principal will not be bound by any act of the agent not warranted expressly by, or fairly and necessarily implied from the terms of the authority delegated to him.

Where third persons deal with an agent in good faith, they must not be bound by the limitations placed on the authority of the agent by the private instructions of the principal, which are not known to such third parties, nor properly inferable from the nature of the agent's employment.

A general authority arises from a general employment in a specific capacity, such as factor, broker, attorney, &c., and such authority empowers the agent to bind the employé by all acts within the scope of his employment, and that power cannot be limited by any private order or direction not known to the party dealing with the agent.

If the principal should clothe the agent, although a mere special agent, with all the apparent muniments of an absolute title to the property in himself, the principal would be bound by the acts of the agent in disposing of the property to *bonâ fide* purchasers.

APPEAL from the Baltimore City Court.

The facts are sufficiently detailed in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ROBINSON, J.

*William H. Cowan*, for the appellants.

Three questions arise in the decision of this case: The first is, was the claim purchased from Hanson negotiable or assignable, so as to vest in a holder or assignee of it a good legal title? The second, had Hanson power, by endorsing or assigning the certificate of claim on the treasury of Maryland, to transfer the property therein to the holder or assignee? The third is, were the holders or assignees of the claim in any way answerable for the fraud of Hanson, if he defrauded the original party to the claim, or who was the beneficiary entitled to the proceeds thereof?

The design of modern legislation and adjudications has been to facilitate the transfers of all rights, claims, and demands, so as to simplify trade and commerce. Vested legal interests in *choses in action*, by assignment in writing, are as common as the endorsements of promissory notes. The Treasurer of the State recognized the validity of the endorsement or assignment of Hanson to the appellants, by paying the claim to them. His recognition of the appellants as *bonâ fide* holders decides the question of fact, so far as his practice extends. *Eichelberger vs. Sifford & Lorentz*, 27 *Md.*, 329. The transferee holds by an irrevocable power of attorney, or by a valid assignment authorized by the Acts of the Legislature bestowing the bounty.

The appellants were not bound to look beyond the paper conferring the power, and with the limits and extent of it, their rights were commensurate.

*Daniel Ratcliffe*, for the appellee.

Hanson was a special agent, appointed for a specific purpose, and it was the duty of the defendants or others

Lister and Supplee *vs.* Allen.

dealing with him to ascertain the extent of his authority. *Chitty on Contracts*, 200, and the cases cited; *Batty vs. Carswell and Carswell*, 2 *Johnson*, 48–50; *Rossiter vs. Rossiter*, 8 *Wendell*, 494–499.

The low price paid for this claim should have put the defendants upon inquiry as to Hanson's authority to sell; and the law is well settled that a principal will not be bound by any act of the agent not warranted expressly by, or by fair and necessary implication, from the terms of the authority delegated to him. *Chitty on Contracts*, 200, and the cases there collected.

BARTOL, C. J., delivered the opinion of the Court.

The appellee, plaintiff below, was entitled under the laws of the State, as widow of Richard Allen, late a soldier in the United States Army, to receive from the treasury the sum of $300 for bounty due the deceased.

Her claim made out in due form of law, with the requisite affidavits and proof annexed, was placed by her for collection in the hands of William E. Hanson; and appended thereto was the following order or draft:

"$300                     •                     186–.

"The Treasurer of the State of Maryland pay to the order of William E. Hanson the sum of three hundred dollars, being balance of State bounty due me as the widow of Richard Allen, a volunteer in Company H, in 30th Regiment U. S. C. Troops. Under the Act of the General Assembly of Maryland of 1864, chap. 15, and amendments thereto."                     her

"EMELINE + ALLEN."

"Witnessed by                     mark.
"Jos. B. RUTH, J. P."

Evidence was offered to prove that Hanson paid nothing to the plaintiff for the claim, that he passed it over to one

James Campbell, a bounty broker, but for what consideration does not appear. Campbell sold it to the appellants for $165, and they received the amount ($300) from the treasury. The object of the suit is to recover from them this sum, as money had and received for the use of the plaintiff.

At the trial the defendants asked the Court to instruct the jury " that if they found the defendants purchased the claim for bounty in question at a fair market price, without any collusion with Hanson or his agent, and paid their money for the same, then the plaintiff is not entitled to recover."

This prayer was refused, and the prayer of the plaintiff was granted, instructing the jury substantially, " that if they believed from the evidence the plaintiff placed her claim in the hands of Hanson, a claim agent, with an understanding that the same should be collected in the usual mode, and paid over to her; but without authority to sell the said claim; and that Hanson sold the same, or caused it to be sold, without her authority or consent, to the defendants, who afterwards collected the full amount from the State, then the plaintiff is entitled to recover said three hundred dollars with interest from the date of its payment."

The jury found a verdict in favor of the plaintiff; and the appeal brings up for review the ruling of the Court below, on the prayers.

The defendants claim exemption from liability, on the ground that they were *bonâ fide* purchasers of the claim for value. But the Court asserted the right of the plaintiff to recover, provided the jury found that Hanson was her agent only to collect, without any authority to sell, and if he sold without her knowledge or consent, the purchasers acquired no title as against her, although they may have acted in good faith.

In support of this position we have been referred to

*Chitty on Contracts*, 200, and to *Batty vs. Carswell*, 2 *Johns.* 48, and *Rossiter vs. Rossiter*, 8 *Wend.*, 494.

These authorities announce the doctrine that the acts of a special agent do not bind his principal unless strictly within his authority.

Chitty states the rule as follows:

"If the agent is appointed only for a particular purpose, and is invested with limited powers, or, in other words, is a special agent, then it is the duty of persons dealing with such agent to ascertain the extent of his authority, and the principal or master will not be bound by any act of the agent not warranted expressly by, or by fair and necessary implication from the terms of the authority delegated to him."

This general rule is correct; but in the application of it to cases affecting the rights of third persons, who have dealt with the agent in good faith, care must be taken not to bind them by limitations placed on the authority of the agent, by the private instructions of the principal, which are not known to such third persons; nor properly inferable from the nature of the agent's employment.

In Perkin's note to the text of Chitty, above quoted, page 200, it is correctly said: "A general authority arises from a general employment in a specific capacity, such as factor, broker, attorney, &c." . . . . . . . "A general authority of this kind empowers the agent to bind the employee by all acts within the scope of his employment, and that power cannot be limited by any private order or direction not known to the party dealing with the agent."

Judge STORY, in his work on Agency, sec. 443, says:

"But the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority.

"It extends further and binds the principal in all cases where the agent is acting within the scope of his usual

employment, or is held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For in all such cases, where one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence." . . . . . .

" So if the principal should clothe the agent, although a mere special agent, with all the apparent muniments of an absolute title to the property in himself, the principal would be bound by the acts of the latter; as for example, if he should clothe him with the apparent title to property by a bill of lading of a shipment, as by making the shipment appear to be on account of the agent, or should trust him with negotiable securities, endorsed in blank, a sale or disposal thereof by the agent, although in violation of his private orders, would bind the principal, and give correspondent rights and remedies to third persons, who become *bonâ fide* possessors under such sale, or other act of disposal against him."

The principle thus stated by Judge STORY is supported by the authority, both of elementary writers and of adjudged cases, and seems to be applicable to the present case.

Hanson was acting as the attorney in fact for the plaintiff; she placed in his hands the evidence of her bounty claim, and by her written order on the treasurer, directed that the same should be paid to the order of Hanson.

As between the original parties, the effect of this transaction was to constitute Hanson as the mere agent or attorney in fact of the plaintiff to collect the money; and he would be liable to her for any violation of duty, by the sale or conversion of her property without her authority or consent. But it does not follow that such liability would attach to third persons, who have dealt with the

agent in good faith, with no other knowledge as to the limits of his agency, except what the written papers disclose. On the contrary, the claim being in its nature assignable, as was decided in *Eichelberger vs. Sifford*, 27 *Md.*, 320, the possession by Hanson of the written evidence of the claim, and the order or check of the plaintiff thereon, directing the same to be paid to his order, placed in his hands such muniments of title as authorized the appellants to deal with him as owner, or as having the power of disposition; and if they so dealt with him in good faith, and purchased for a valuable consideration, they are entitled to be protected against the claim of the principal, although Hanson may have violated his instuctions.

In such case, the loss must fall, not upon the appellants, but upon the plaintiff, who inadvertently, or perhaps, ignorantly placed it in the power of her agent to violate her confidence, or to impose upon third persons.

If the plaintiff's check upon the treasurer, making the money payable to Hanson's order, be regarded as an ordinary negotiable security, then, by the law merchant, the appellants, if they took it in good faith, and without notice of the nature of Hanson's agency, would clearly be entitled to protection as *bonâ fide* endorsees for value.

But without placing the case upon this ground, treating the claim as a mere *chose in action* assignable, the appellants are equally entitled to protection, if they acquired the same *bonâ fide* and for value, from Hanson or his agent, with no other notice of the rights of Hanson, or the nature of his agency, except that furnished by the papers themselves.

Being of opinion that there was error in the instruction given to the jury, the judgment will be reversed, with leave to the appellee to take out writ of procedendo.

*Judgment reversed,*
*with leave to take out procedendo.*

(Decided 21st December, 1869.)