Levi *vs.* Booth.

(Decided 28th April, 1882.)

SOLOMON LEVI and HENRY LEVI *vs.* ALFRED E. BOOTH.

*Unauthorized sale of a Diamond Ring— When mere Possession does not give power to dispose of an Article to the Preclusion of the right of the Real owner—Section 4 of Article 3 of the Code relating to "Agents and Factors," applicable only to Mercantile transactions—Conversion—Trover—Measure of damages— When other Indicia of property than mere Possession are required of one Selling goods as Owner.*

B., the owner of a valuable diamond ring placed it in the hands and possession of D. a dealer and trader in jewelry, but who had no shop or established place of business, for the purpose of obtaining a match for it, or, failing in that, to get an offer for it. There was evidence on the part of the defendants tending to show, that D. sold the ring to H. L. one of the defendants, who were pawnbrokers, for a certain price,—part paid in cash, and the other part in goods. D. dealt with the defendants, and made purchases on credit, and became considerably indebted to them. It was in proof on the part of the plaintiff that before the sale to H. L. he had been informed that the ring belonged to B., and that D. had no power or authority to sell it. On the other hand H. L. testified that he purchased the ring of D. supposing that he was the real owner of it. It was also proved by the admission of H. L. when demand was made of the defendants by B. for the ring, that it had been sold to some person whose name he did not know or could not furnish. In an action

Levi *vs.* Booth.

in trover brought by B. against S. L. and H. L. for the conversion of the ring, it was Held :

1st. That even if D. sold the ring to H. L. as if he were the owner thereof, when in fact he was not, and had no express authority to sell it, such sale was ineffective at common law as between the defendants and B. the rightful owner.  B. was not thereby divested of his right of property in the ring.

2nd. That although D. was a dealer in jewelry, the bare possession of the ring did not clothe him with power to dispose of the same, as though he were owner, or as having authority as agent to sell or pledge the same, to the preclusion of the right of B. the real owner.

3rd. That D. in being intrusted with the ring to procure a match therefor, or, failing in that, to get an offer for it, was not an agent within the sense and meaning of sec. 4 of Art. 3 of the Code, relating to " Agents and Factors."

4th. That the Article of the Code relating to "Agents and Factors," has no application to any other than mercantile transactions.

5th. That whether D. sold the ring without authority, or only left it with the defendants, and the defendant H. L. sold it, such wrongful sale was of itself a conversion, and no demand by B. was necessary; and the defendants were liable in trover for the. value of the ring at the time of the conversion, with interest thereon. from such time as the jury might deem proper.

Independently of the provisions of the statute in regard to the dealings with agents and factors, the *bare possession* of goods by one, though he may happen to be a *dealer* in that class of goods, does not clothe him with power to dispose of the goods as though he were owner, or as having authority as agent to sell or pledge the goods, to the preclusion of the right of the real owner.  If he sells *as owner* there must be some other *indicia* of property than mere possession.   There must be some act or conduct on the part of the real owner whereby the party selling is clothed with the apparent ownership, or authority to sell, and which the real owner will not be heard to deny or question to the prejudice of an innocent third party dealing on the faith of such appearances.

Appeal from the Superior Court of Baltimore City.

Levi *vs.* Booth. ,

This was an action of trover brought by the appellee against the appellants, (father and son) for the conversion of a valuable diamond ring. The case is further stated in the opinion of the Court.

*Exception.*—The plaintiff offered two prayers, the second of which is omitted, the first is as follows:

1. If the jury shall believe that the plaintiff was the owner of the diamond ring spoken of in evidence; and that he entrusted it to De Wolff for the purpose of procuring another diamond ring as a match therefor, and that failing so to do, to procure him an offer therefor, and so entrusted to him for no other purpose, and shall find that said De Wolff left the same with defendants, and that they sold the same prior to the institution of this suit, and did not, and could not return the same when demanded of plaintiff, as spoken of in evidence, then plaintiff is entitled to recover such sum as they shall find said ring to have been worth at the time of such conversion, with such interest upon said sum, as they may deem proper to give under the circumstances given in evidence.

The defendant offered the following prayers:

1. That there has been no evidence offered legally sufficient to sustain the issues on the part of the plaintiff, as against Solomon Levi, one of the defendants, and that therefore, the jury must find for said defendants.

2. That if the jury find from the evidence, that the defendants came into possession by delivery of the ring, the property claimed in this action; but that at the time of the demand and refusal, he had not the ring in his possession, or under his control, and was not in a condition to deliver it up; that the demand and refusal is not evidence legally sufficient to prove a conversion by the defendants, if made when the property was not in his possession or under his control, and will not entitle the plaintiff to recover under the pleadings and evidence in this action.

3. That if the jury find from the evidence that the defendants came into possession of the ring by delivery, the property claimed in this action, and did exercise ownership over it, and did dispose of and convert it before he knew or had knowledge that the plaintiff, was the owner, or that he claimed to be the owner, that such acts do not amount to a wrongful conversion in law, and the plaintiff connot recover under the pleadings and evidence in this case.

4. That if the jury find from the evidence in this case, that De Wolff was a *dealer* in jewelry, and that with knowledge of that fact, the plaintiff then and there delivered and entrusted him with the possession of the ring, the subject-matter of this action, and thereby put it into the power of the said De Wolff to dispose of the ring, or to do acts *apparently as owner thereof*, which will result in injury to innocent third persons, or to the principal, the law imposes the loss upon the principal; and if the jury further find, that the defendant so purchased the said ring from De Wolff in good faith, and for value, without notice, then the plaintiff cannot recover, and the verdict must be for defendants.

5. That if the jury find from the evidence that De Wolff was the agent of the plaintiff, and that under the circumstances mentioned in the fourth prayer of the defendants, he disposed of, and the defendant purchased the said ring, said De Wolff then and there acting as owner and as though he were the principal, without disclosing the principal or real owner, that a payment then and there made to the said De Wolff, although in fact an agent only, was good against any subsequent claim by the principal or real owner, and that the plaintiff cannot recover in this action.

6. That if the jury find from the evidence that De Wolff was a dealer in jewelry, and that plaintiff having such knowledge, then and there entrusted him with the posses-

sion of the ring, the subject-matter of this action, with authority to dispose of it, though the authority be limited by conditions as to money or price, and the jury further find that defendants had no means of ascertaining the limitations imposed upon De Wolff; and that defendants, without such knowledge or information, purchased the ring of De Wolff, believing him to be the owner, for value and in good faith, that the defendants acquired a good title, and the plaintiff cannot recover.

The Court (GILMOR, J.,) granted the plaintiff's prayers, and refused those of the defendants. The defendants excepted, and the verdict and judgment being for the plaintiff, they appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, ALVEY, ROBINSON, IRVING and RITCHIE, J.

*Robert D. Morrison*, for the appellants.

*Geo. Hawkins Williams*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

In this case it appears that the plaintiff was the owner of a valuable diamond ring, and he placed it in the hands and possession of a party by the name of De Wolff, a dealer and trader in jewelry, for the purpose of obtaining a match for it, or, failing in that, to get an offer for it; and there is nothing in the proof to show that it was given into the possession of De Wolff for any other purpose, or that he was in any manner authorized to sell it.

The defendants were pawnbrokers, and dealt in articles of jewelry. De Wolff dealt with them, and made purchases on credit, and settled from time to time; and among other articles of jewelry, he purchased diamond rings, earrings, studs, watches, etc., and became considerably indebted to the defendants. He appears to have been

a sort of street peddler of articles of jewelry,—going from place to place and disposing of his articles upon the best terms he could make. He had no shop or established place of business.

On the part of the defendants the evidence tended to show, that De Wolff sold the ring to Henry Levi, one of the defendants, for a certain price,—part paid in cash, and the other part in goods. But, on the part of the plaintiff, proof was given, that before such alleged sale, Henry Levi had been informed that the ring belonged to the plaintiff, and that De Wolff had no power or authority to sell it. De Wolff, as witness, proved that he left the ring with Henry Levi to obtain an offer for it, but with no authority to sell it; while, on the other hand, Henry Levi testified that he purchased the ring of De Wolff, supposing him to have been the real owner of it. It was also proved, by the admission and statement of Henry Levi,' when demand was made of the defendants by the plaintiff for the ring, that the ring had been sold to some person whose name he did not know or could not furnish.

The plaintiff brought his action in trover for the conversion of the ring, and recovered a verdict and judgment for the supposed value thereof.

At the trial, upon the evidence offered, the plaintiff submitted two prayers for instruction to the jury, and they were both granted; and the defendants submitted six prayers, all of which were refused; and to the rulings of the Court in respect to these several prayers, the defendants excepted.

Upon these prayers thus submitted, three principal questions are presented:

1st. Supposing it to be true, as contended by the defendants, that De Wolff did sell the ring to Henry Levi, one of the defendants, as if he were the owner thereof, when in fact he was not the owner, and had no express authority to sell it, whether, under the facts dis-

Levi *vs.* Booth.

closed in evidence, such sale was good and effective at the common law, as between the defendants and the real owner? If not,

2nd. Whether such sale was good and effective, in view of the facts disclosed, as between the real owner of the ring and the defendants, under the provisions of what is known as the Factors' Act, Code, Art. 3, sec. 4? And,

3rd. If neither of the defendants acquired title to the ring, whether, under the facts of the case, there was such conversion thereof by the defendants, or one of them, as would entitle the plaintiff to recover?

1. It is certainly a well established principle of the common law, founded, as it would seem, upon a maxim of the civil law, *nemo plus juris in alium transferre potest quam ipse habet,* that a sale by a person who has no right or power to sell, is not effective as against the rightful owner. Sales made in market overt were an exception to this general rule; but the old Saxon institution of market overt has never been recognized in this State, nor, as far as we are informed, in any of the United States. *Browning vs. Magill,* 2 *H. & J.,* 308; *Mowry vs. Walsh,* 8 *Cow.,* 238; *Dane vs. Baldwin,* 8 *Mass.,* 518; *Ventress vs. Smith,* 10 *Pet.,* 175. At the common law, therefore, a person in possession of goods cannot confer upon another, either by sale or pledge, any other or better title to the goods than he himself has. To this general rule there is an apparent exception in favor of *bona fide* purchasers or pledgees, where the party in possession making the sale or pledge has a title defeasible on account of fraud, or by reason of a condition in the contract of sale under which he holds. *Hall vs. Hinks,* 21 *Md.,* 406; *Donaldson vs. Farwell,* 93 *U. S.,* 631. Therefore, to make either a sale or pledge valid as against the real owner, where the sale or pledge is made by another person, it is incumbent upon the person claiming under such sale or pledge, to show that the party making it had authority from the owner. *Cole vs.*

*North-Western Bank, L. R.,* 10 *C. P. in Ex. Ch.,* 354, 363; *Johnson vs. Credit Lyonnais,* 2 *C. P. Div.,* 224, affirmed on appeal, 3 *C. P. Div.,* 32. If, however, the real owner of the goods has so acted as to clothe the seller or pledgor *with apparent* authority to sell or pledge, he will, even by the common law, be precluded from denying, as against those who may have acted *bona fide* on the faith of that *apparent authority,* that he had given such authority, and the result, as to them, is the same as if he had really given it; but it is, of course, otherwise in respect to those who may have acted with notice of the want or limitation of authority in point of fact.

This principle of estoppel, as applied to sales or pledges of goods or merchandise, is aptly and completely illustrated in the familiar and often cited case of *Pickering vs. Busk,* 15 *East,* 38. The case was decided before the passage of any of the English Factor Acts, and the facts were, that the true owner had bought parcels of hemp through *Swallow,* who was a broker and an agent for sale. At the instance and request of the plaintiff, the real owner, the hemp was transferred on the books of the wharfinger from the name of the seller to that of *Swallow,* who, without express authority from the owner, afterwards sold it. In an action of trover by the real owner, to recover for the conversion of the hemp thus sold, it was held, that the transfer on the books of the wharfinger by the direction of the plaintiff to the name of *Swallow,* authorized the latter to deal with the hemp as owner with respect to third persons, and that the plaintiff, who had thus enabled *Swallow* to assume the appearance of ownership to the world, should abide the consequence of his own act. Lord ELLENBOROUGH said: "It cannot fairly be questioned in this case but that *Swallow* had an *implied* authority to sell. Strangers can only look to the acts of the parties, and to the external *indicia* of property, and not to the private communications which may

pass between a principal and his broker; and if a person *authorize* another to assume the apparent right of disposing of property in the ordinary course of trade, it must be presumed that the apparent authority is the real authority." And in conclusion he said: "The sale was made by a person who had all the *indicia* of property: the hemp could only have been transferred into his name for the purpose of sale; and the party who has so transferred it cannot now rescind the contract. If the plaintiff had intended to retain the dominion over the hemp, he should have placed it in the wharfinger's books in his own name."

The same principle, though applied in a case quite different in its circumstances, was adopted by this Court, in the case of *Lister & Supplee vs. Allen*, 31 *Md.*, 543. And in the recent English cases of *Cole vs. North-Western Bank, L. R.*, 10 *C. P. Ex. Ch.*, 354; *Johnson vs. The Credit Lyonnais*, 2 *C. P. Div.*, 224, affirmed on appeal, 3 *C. P. Div.*, 32; and the *City Bank vs. Barrow*, 5 *App. Cas. H. L.*, 664, the same principle, with its proper limitations, was fully expounded, both as it exists at the common law, independently of statute, and as it has been modified by what is known as the Factors' Acts; and those cases fully and clearly maintain the principles we have stated.

In this case there is no evidence that there was any *express* authority by the plaintiff to De Wolff to sell the ring; though there is evidence that De Wolff was authorized to procure an offer for it. This, of course, reserved to the plaintiff the right to accept or reject the offer, if one was made. With this limitation of authority, there can be no question of the principle propounded in the plaintiff's first prayer; for that goes upon the hypothesis that there was no sale in fact to Levi, but that the ring was simply left with the defendants, and that they afterwards, without other authority, sold it. If it be true that there was no sale to the defendants, or one of them, and

that they, simply having the possession, and without authority for so doing, sold or disposed of the ring, it is clear they were wrong-doers, and therefore liable for the conversion. This was the theory and the principle upon which the plaintiff's case appears to have been presented in the Court below.

2. But, on the part of the defendants, the case was presented in a different aspect. According to the theory of the fourth, fifth, and sixth prayers of the defendants, there was a sale by De Wolff to the defendants, or one of them; and the Court was asked, by the fourth and fifth prayers, to instruct the jury, that if they found that De Wolff was a *dealer* in jewelry, and, with knowledge of that fact, the plaintiff *intrusted* him, or *intrusted* him as agent, with the possession of the diamond ring, and thereby put it in his power to act as *apparent* owner thereof, and that the defendants acted upon the faith of such apparent ownership, and purchased the ring for value and without notice of the ownership of the plaintiff, then the plaintiff could not recover.

The sixth prayer proposed to submit to the jury to find, whether the ring had not been delivered or intrusted to De Wolff by the plaintiff, with authority to sell or dispose of it, under certain limitations as to price. But, as we have already said, there was no evidence of such authority being delegated to De Wolff, and the Court, therefore, would not have been justified in submitting that question to the jury. That prayer, therefore, was properly refused.

But, with respect to the propositions involved in the fourth and fifth prayers, other and different considerations are presented.

Independently of the provisions of the statute in regard to the dealings with agents and factors, it is very clear, upon the principles that we have already stated, that the *bare possession* of goods by one, though he may happen

Levi *vs.* Booth.

to be *a dealer* in that class of goods, does not clothe him with power to dispose of the goods as though he were owner, or as having authority as agent to sell or pledge the goods, to the preclusion of the right of the real owner. If he sells *as owner* there must be some other *indicia* of property than mere possession.   There must, as in the case of *Pickering vs. Busk, supra,* and more fully expounded and illustrated in *Johnson vs. The Credit Lyonnais, supra,* be some act or conduct on the part of the real owner whereby the party selling is clothed with the apparent ownership, or authority to sell, and which the real owner will not be heard to deny or question to the prejudice of an innocent third party dealing. on the faith of such appearances.   If it were otherwise, people would not be secure in sending their watches or articles of jewelry to a jeweller's establishment to be repaired, or cloth to a clothing establishment to be made into garments.   If De Wolff, instead of being a mere peddler of jewelry, had occupied a shop where he carried on the business of jeweller, and the ring had been left with him, either to be mended, or reset, or to be exposed to inspection in order to procure an offer for it, without any authority to sell it, we suppose it to be clear, that the owner could not have been divested of his property by an unauthorized sale by the jeweller, under such circumstances.   And if he could not be divested of his property by sale under such circumstances, we do not perceive how the present case could be distinguished, in principle, from that just stated.

It is true, the general rule of the common law, that a person in the sale or pledge of goods cannot confer a greater or better title than he himself possesses, has, to some extent and under special circumstances, been modified by statute.   The principal provisions of our own statute, (Code, Art. 3,) in relation to Agents and Factors, are substantially, and in several particulars literally, the

same as the English Statutes of 4 *Geo.* 4, *ch.* 83; 6 *Geo.* 4, *ch.* 94; and 5 and 6 *Vict.*, *ch.* 39, upon the same subject. By these statutes a more extended authority than existed by the rules of the common law has, for the facility and convenience of commerce, been conferred on agents and factors, or rather, greater protection has been secured to vendees and pledgees dealing with such agents. The general effect of these statutes is to render valid sales and pledges made by factors and agents, in cases where the agency may not be known to the buyer, or notwithstanding notice of the fact of their being merely agents or factors, provided the party dealing with them shall not have notice that they are acting without authority or *mala fide.*

Sec. 4 of Art. 3 of the Code, provides that any person may contract with any agent or factor *intrusted* with any goods, etc. for the purchase thereof, and may receive from and pay for the same to such agent; and such contract and payment shall be good against the owner, notwithstanding such person shall have notice that the person making the contract is an agent or factor; provided, however, that such contract and payment be made in the usual course of business, and that such person shall not, when the contract is entered into or payment made, have notice that the agent or factor is not authorized to sell the goods, or to receive the money for the same.

This section of the statute does not appear to have received any express construction by this Court; but it is quite apparent, that, in order to arrive at a true construction of it, two things must be considered; first, whether the agent intrusted with the goods and making the sale thereof was of the class or species contemplated by the Act; and, secondly, whether the contract of sale was made in the usual and ordinary course of business by such agent.

The similar and corresponding section in the English Factors' Act of 6 Geo. 4, ch. 94, sec. 4, and as extended

by 5 and 6 Vict., ch. 39, has been the subject of extensive discussion in the Courts of that country; and the Courts there hold, that the Factors' Acts have no application to any other than mercantile transactions; that the generality of the terms, "any agent or factor intrusted with goods, merchandise," etc. must be taken in a restricted sense; and that while every person *intrusted* by the owner with the care, storage, or carriage of goods, is, in one sense, an "agent intrusted with goods," yet he is not an agent within the meaning of the statutes. *Monk vs. Whittenbury*, 2 *B. & Ad.*, 484; *Wood vs. Rowcliffe*, 6 *Hare*, 191. In the case of *Heyman vs. Flewker*, 13 *C. B.* (*N. S.,*) 519, Mr. Justice WILLES, in delivering judgment, says that what the cases decide "may be stated thus,—that the term 'agent' does not include a mere servant or care-taker, or one who has possession of goods for carriage, safe custody, or otherwise as an independent contracting party; but only persons whose employment corresponds to that of some known kind of commercial agent like that class (factors) from which the Act has taken its name." And this statement, as the result of the authorities, has been fully and without qualification adopted, as being in all respects correct, by the Court of review in Exch. Ch., in the case of *Cole vs. North-Western Bank, L. R.,* 10 *C. P.*, 354, and in *Johnson vs. The Credit Lyonnais,* 2 *C. P. Div.,* 224, affirmed on appeal, 3 *C. P. Div.,* 32, and in the case of *The City Bank vs. Barrow,* 5 *App. Cas. Ho. Lords,* 664.

Now, adopting this construction which has been placed upon the provision of the English statute similar to our own, as the proper construction of the terms of our statute, of which we entertain no doubt, the question is, whether De Wolff was an agent within the sense and meaning of the statute? That he was simply a *dealer* in jewelry would seem clearly to be without any reliable effect upon the question of authority; and there was nothing to show,

and the prayers did not offer to submit to the jury to find, that he was either factor, broker, auctioneer, commission agent, or other agent whose business it was *qua* agent to sell; or that he did sell the diamond ring in question in the usual and ordinary course of business  And without such finding upon the construction of the statute just stated, the sale was not within the protection of the statute; and therefore the prayers were properly refused.

3. The last question is, whether, upon the state of the case as presented by the second and third prayers offered by the defendants, there was such conversion of the ring as entitled the plaintiff to recover in an action of trover?

It is conceded by these prayers, and, indeed, shown by the proof offered by the defendants, that the ring had been sold or disposed of by them, or one of them, before the demand made by the plaintiff.  And such being the case, whether De Wolff had sold the ring without authority, or had only left it with them, or one of them, and they had sold it, such wrongful sale by them was of itself a conversion, and no demand was necessary.  *Edwards vs. Hooper*, 11 *M. & W.*, 363.  And though it may be apparently hard on those who deal innocently and in the ordinary course of business with a person in possession of goods, yet it is a settled principle, that if there has been what amounts in law to a conversion of the plaintiff's goods, by any one, however innocent, that person will be liable for the value of the goods to the real owner. *Hardman vs. Booth*, 1 *Hurls. & C.*, 803.  In the case of *Stephens vs. Elwall*, 4 *M. & S.*, 259, Lord ELLENBOROUGH laid it down as clear law, that a person is guilty of a conversion who intermeddles with the property of another and disposes of it, and it is no answer that he acted under authority from some other person, who had himself no authority to dispose of it.  And the same principle, to its fullest extent, was laid down as settled law, by the House of Lords, in the case of *Hollins vs. Fowler, L. R.*, 7 *Ho.*

*L.*, 757. The Court below was therefore right in rejecting the second and third prayers of the defendants.

There was an objection taken to the first prayer of the plaintiff, as to the manner of submitting the question of interest to the jury. But we think the objection was not well taken. We must suppose that the jury read the instruction, according to a fair intendment, that the discretion given them over the matter of interest did not relate to the rate per cent. that might be allowed, but solely to the time for which it might be allowed upon the value of the property sued for.

Upon the whole record, we find no error in any of the rulings excepted to, and we must therefore affirm the judgment.

*Judgment affirmed.*

(Decided 4th May, 1882.)