## WILLIAM J. LEMP BREWING CO., A Body Corporate, *vs.* GEORGE C. MANTZ.

*'Personal property: transfer of title; only that of vendor or pledgor acquired. Innocent parties: loss by acts of third party. Equitable defenses: when not available. Court and jury: province of—.*

Even as to sales and pledges of personal property, no one can transfer to another a better title than he has himself; and a *bona fide* purchaser or pledgee of personal property only acquires the rights of the vendor or pledgor.          p. 181

A manufacturer had loaned certain wagons and harness to a retailer who sold and distributed the product to customers; there was no evidence that the retailer had any right to sell the wagons and harness, and there was no evidence, other than bare possession, that the chattels were his; the wagons and harness were attached by one of the retailer's creditors, a livery man; a case was docketed by the manufacturer, as claimant; in such a case, on appeal, it was *held,* that a plea that the retailer had possession of the property, and the indicia of ownership, and that on the faith of such ownership the defendant had extended credits to him, was demurrable.
                                           p. 184

The application of the doctrine, that "where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it," must be founded upon something more than bare possession of personal chattels.          p. 183

A defense which is available at law can not be set up as an equitable plea.          p. 184

Under section 47 of Article 9 of the Code (1912), the debtor and attaching creditor are made *defendants* in the claimant's suit, and the claimant, in addition to asserting his claim, may recover damages for the wrongful seizure and detention of his property.          p. 186

The burden of proof is upon the claimant to show title to the property.                                    p. 186

A Court should not assume the existence of facts and take away from the jury the finding of the same.        p. 186

*Decided April 8th, 1913.*

Appeal from the Baltimore City Court (DAWKINS, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. Reynolds,* for the appellant.

*Charles Lee Merriken* and *Frank M. Merriken* submitted a brief for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellee in this case sued out of the Baltimore City Court an attachment and caused certain property, consisting of one two-horse wagon, one one-horse wagon, one double set of harness and two single sets of harness, to be attached as the property of H. W. Bissing, a non-resident debtor.

The William J. Lemp Brewing Company, the appellant, as claimant of the two wagons, the double set of harness and the one single set of harness, filed its petition in said Court alleging that said wagons and harness were the property of the appellant; that Bissing had been engaged in Baltimore City in the business of bottling and selling beer manufactured and sold to him by the appellant, and that said wagons and harness had been loaned to him by the appellant to be used by him in the said business, that the wagons were kept by Bissing at the livery stable of the appellee, from whom he was accustomed from time to time to hire horses for use in said wagons for the purpose of delivering beer; that after Bissing discontinued his business in Baltimore City he left the wagons and harness in the possession of the appellee, upon whom the appellant made a demand for said property,

and that the appellee refused to surrender it and concealed the same so as to prevent the appellant from regaining possession of it.

A case was docketed in the name of the appellant as claimant against the appellee and presumably against Bissing also. The summons against Bissing was returned *"non est,"* but the appellee having been summoned and notified of the appellant's claim, appeared and filed two pleas to the petition. The first plea avers that the property mentioned in the petition was not the property of the appellant, but was, "at the time of the levying of said attachment," the property of Bissing, and the second plea, "by way of defense on equitable grounds," alleges "That at and during the time the said Bissing incurred the indebtedness to the defendant, upon which indebtedness said attachment was based, the said Bissing was the apparent owner of the wagons and harness in said petition mentioned and was clothed and possessed of all the indicia of ownership of said property and that upon the faith and representation of said apparent ownership, the said defendant extended credit to said Bissing to the amount set out in the account filed with said attachment proceedings."

The plaintiff, appellant, joined issue on the first plea and demurred to the second plea. The Court below overruled the demurrer, and the case went to trial on issue joined on the first plea and on the plaintiff's replication traversing the averments of the second plea.

At the trial the plaintiff offered in evidence the deposition of Adolph Wahlstab to the effect that he resided in St. Louis and had been employed by the appellant for thirty years as its traveling representative and salesman; that he had seen the wagons and harness attached by the defendant at least a hundred times, and that they had been loaned by the appellant, who was a wholesale dealer in and a distributer of domestic and imported beer, for his use in delivering to his customers in Baltimore City the beer sold and shipped to him in kegs by the appellant; that "the arrangement was made by the deponent, who personally went to the office

of the Maryland Wagon Works and ordered the first of the two wagons," and that he instructed Bissing to order for the appellant another wagon from the Maryland Wagon Works; that he knew "of his own knowledge" that said wagons and harness were paid for with the money of the appellant, and that Bissing came into possession of them under the following arrangement: "Bissing bought from the Lemp Company its beer in kegs and desired to deliver it in bottles to his customers in Baltimore: deponent agreed to lend to Bissing the wagons and harness, with the understanding that the Lemp Company were to have possession of them at any time they chose, and that the wagons and harness were to be used for no other purpose than the delivery of beer shipped by the William J. Lemp Brewing Company to Bissing": that the wagons and harness were the property of the appellant: that when he saw them prior to the attachment "they all had the name and trade-mark of the William J. Lemp Brewing Co., and they also bore the same name and trade-mark after the attachment".

The defendant testified that he had been engaged in the livery business in Baltimore City for nearly four years, and that he began to hire horses to Bissing in February, 1910: that Bissing had a two-horse wagon, a one-horse wagon, one double set of harness and two single sets of harness, and that when they were not in actual use the harness was kept in the defendant's office, and the wagons were kept in the defendant's shed: that Bissing's initials were on the one-horse wagon and on one of the single sets of harness, but that he did not recall what was on the other wagon or on the other sets of harness: that there was nothing in connection with his dealings with Bissing to indicate that the property belonged to the appellant, that he thought it belonged to Bissing, and that that was the reason be allowed his bill to run up to $180.00. When asked if Bissing made any representations with reference to the ownership of the property, he replied: "Mr. Bissing came to me and wanted to hire a horse, and I had a nice big animal and I

lent it to him.    He sent the single wagon around and
hooked my horse to the wagon.    Now, I am going to send a
single wagon, then, I said, I told him his wagon was too
heavy to be drawn by one horse and that he would have to
have two horses, which I thought was a double wagon.    He
had a pole and also a pair of shafts to his wagon."    On
cross-examination he stated the appellant's name was not on
the one-horse wagon, but that there was a monogram with
the name "Lemp" across it on the two-horse wagon.    When
asked if he was prepared to say that the name of Lemp
Brewing Co. was not on the wagon he replied that he did
not recollect.    Louis R. Wilhelm, a witness for the defend-
ant, testified that he was a harness manufacturer and that
he sold Bissing one set of harness in 1907, with "H. W. B."
on the "winkers and saddle".    Frederick Utz, another wit-
ness for the defendant, stated that he was employed by
Bissing in 1910 and 1911 to bottle beer at his place of
business on Saratoga street, and that Lemp's name and the
name of H. W. Bissing were on the two wagons used by
them, and the defendant's witness, Adam J. Roseway, testi-
fied that the initials "H. W. B." were on the harness and
on the one-horse wagon, and that the words "Lemp's, St.
Louis, H. W. Bissing. Distributor," were on the two-horse
wagon.

At the conclusion of the testimony the plaintiff offered
two prayers and the defendant one.    By the plaintiff's second
prayer, which was rejected, the Court was requested to
instruct the jury that there was no evidence in the case
legally sufficient to enable the jury to find that Bissing had
any interest in the property attached at the time of the
issuing of the attachment, and that their verdict should be
for the plaintiff, and the defendant's prayer, as modified
and granted by the Court, contained the following instruc-
tion: "If the jury shall find from the evidence that H. W.
Bissing was in possession of the wagons and harness men-
tioned in the evidence, in the month of December, 1910, and
in January, February, March and April, 1911, and that

the possession of said articles by said Bissing was such as to induce any reasonably cautious and prudent man to believe that said articles were the property of said Bissing at that time; and if the jury shall further find that the defendant Mantz extended credit to said Bissing believing he owned said property, then the verdict of the jury should be for the defendant, notwithstanding the jury may believe from the evidence that the actual ownership of said articles was in the plaintiff."

The plaintiff excepted to the rejection of its second prayer and to the granting of the defendant's prayer, and the judgment being in favor of the defendant, the plaintiff appealed.

The proposition presented by the defendant's prayer is that if the possession of Bissing was such as to induce a reasonably cautious man to believe that the property belonged to him, and the defendant extended credit to him believing that it was his property, then the plaintiff was not entitled to it notwithstanding the property belonged to the plaintiff. The principle upon which that instruction was based has no application to a case like the one at bar. The general rule, even as to sales and pledges of personal property, is that "no one can transfer to another a better title than he has himself," and that a *bona fide* purchaser or pledgee acquires only the rights of the vendor. As was said in *Hopper* v. *Callahan,* 78 Md. 529, "There are some exceptions to this rule, which are as well recognized and established as the rule itself. When the owner of goods has put in possession of another person such evidence of the right of selling them as would, according to the ordinary and common course of business, establish a right of disposal, a sale to a *bona fide* purchaser without notice, will divest his title. He is surely bound by his own act, when he holds out to the public a third person as one having competent authority to make sales. But it is not held that mere possession of goods will justify the inference that the purchaser

has the right to sell them.    The inference must be a natural and obvious deduction from the circumstances of the case according to the usages of business.    Where goods were delivered to a person whose common business was to sell, it was held that an authority to sell might be implied.    But it is also held that no such authority would be conferred by instructing them to a person whose business was of a different nature."    The general rule and the exceptions to it are also stated with great clearness in the case of *Levi* v. *Booth,* 58 Md. 305, where JUDGE ALVEY says, "it is very clear, upon the principles that we have already stated, that the bare possession of goods by one, though he may happen to be a dealer in that class of goods, does not clothe him with power to dispose of the goods as though he were owner, or as having authority as agent to sell or pledge the goods, to be precluded of the right of the real owner.    If he sells as owner there must be some other *indicia* of property than mere possession.    There must, as in the case of *Pickering* v. *Busk.* (15 East, 38), and more fully expounded and illustrated in *Johnson* v. *Credit Lyonais* (2 L. R. C. P. Div. 224), be some act or conduct on the part of the real owner whereby the party selling is clothed with the apparent .ownership, or authority to sell, and which the real owner will not be heard to deny or question to the prejudice of an innocent third party dealing on the faith of such appearances."    In the case last referred to the Court construes, what is now, sec. 4 of Art. 2 of the Code of 1912 as referring only to factors and agents whose business it is *as agent* to sell.    See also *Johnson* v. *Frisbie,* 29 Md. 76, and 16 *Cyc.* 775, where it is stated that there must be something more than bare possession to justify the application of the doctrine of *estoppel in pais* to sales of personal property of the kind we are here considering.

In this case, even if we place the defendant in the attitude of a *bona fide* purchaser, and treat Bissing as the agent of the appellant, there is not the .slightest evidence that Bissing

was authorized to sell the property in question or that he was
engaged in the business of selling wagons, etc., as agent and
the mere fact that the property was in his possession and that
he was allowed to use it in his business of bottling and sell-
ing beer, does not estop the plaintiff from asserting its title
to it. Any person who purchased the property from him
under such circumstances, without further evidence of his
right to sell, would have taken it subject to the rights of the
appellant. Nor does the fact that the name of Bissing as
"Distributor" was on one of the wagons justify a different
conclusion. It simply advertised the business in which he
was engaged, which was otherwise well known to the defend-
ant.

But the defendant is not in the position of a *bona fide* pur-
chaser or pledgee of the property. He can only assert such
right as Bissing had. It is stated in 2 *Poe's P. & P.* (3rd
ed.), sec. 531: "As a general principle, the attaching cred-
itor is subrogated to the rights of a debtor as against the
garnishee, and can only recover by the same right and to the
same extent as the debtor might, were he suing the gar-
nishee," and the same principle applies to the defendant.
There are, of course, well recognized exceptions to this gen-
eral rule, but none of them afford any support for the de-
fendant's contention. The defendant was not induced by any
representation or act of the plaintiff to believe that the prop-
erty belonged to Bissing, and there is no principle upon
which he can be allowed to take the plaintiff's property to
satisfy Bissing's debt. The application of the doctrine that
"Whenever one of two innocent persons must suffer by the
acts of the third, he who has enabled such third person to
occasion the loss must sustain it" (16 *Cyc.* 773; *Lister* v.
*Allen,* 31 Md. 543; *Eversole* v. *Maull,* 50 Md. 95), must be
founded upon something more than the bare possession of
personal property of the kind mentioned in this case. 16
*Cyc.* 775; *Johnson* v. *Frisbie, supra,* and other cases cited
above.

There was, for the reasons we have stated, serious error in the granting of the defendant's prayer, and for the same reason we think the demurrer to the defendant's second plea should have been sustained. It is true, the language used in the plea may be found in the opinions of this Court (*Lister* v. *Allen, supra*), but the plea does not allege that the *plaintiff* clothed Bissing with the "indicia of ownership of said property," or in what respect he was the apparent owner, and the bare possession of Bissing alleged in the plea was not sufficient. In the case of *Shartzer* v. *Park Association,* 86 Md. 337; the Court held that an equitable plea should set out the facts entitling the defendant to the relief claimed. But this plea was bad for another reason. The defense relied upon was available at law and could not, therefore, be set up as an equitable plea. In the case of *Albert* v. *Freas,* 103 Md. 583, this Court said: "Estoppel *in pais* is as available at law as in equity, and if the facts alleged in the plea constituted a bar to the plaintiff's claim, they could have been offered in evidence under the issue joined on the first plea. It was, therefore, a plea not authorized or permitted by the Act, and the demurrer thereto was properly sustained."

There was no error in the rejection of the plaintiff's second prayer. The wagons and harness were not in the actual possession of the plaintiff at the time they were attached, and the burden was on it to establish its right to the property. The possession was at least *some* evidence of title, and sufficient to cast upon the plaintiff the burden of showing a superior right. 31 *Cyc.* 929; 1 *Greenleaf on Ev.* (16th ed.), sec. 34; *Cole* v. *Berry.* 42 N. J. L. 315; *Miller & Sons Piano Co.* v. *Parker,* 26 Atl. Rep. 303. It is said in 4 *Cyc.* 743: "Where a party interpleads, or institutes an independent action, claiming a right to the property superior to that of the attaching creditor, the burden is, as a rule, upon him to establish the validity of his claim. By statute, however, if the claimant is in possession at the time of the levy, the burden has been placed upon the attaching party; and in

some States the statutes impose upon the attaching creditor the duty of introducing evidence showing *prima facia* ownership of property in the debtor and that it was subject to levy, whereupon the burden of proof shifts to claimant to establish his claim. If, however, the transfer of the property to the interpleader is admitted and fraud is alleged, to avoid such conveyance the burden of proof is upon the party so alleging." See also 2 *Ency. of P. & P.* 82-86. Mr. Poe in his work on practice (2 *Poe's P. & P.,* 3rd. ed., sec. 561) says: "Upon the filing of such a claim and plea, the clerk dockets a suit between the attaching creditor and the claimant, and at the trial, in order to entitle the plaintiff to a judgment of condemnation against the lands or goods and chattels attached, it is incombent upon him to prove title in the defendant. The burden of proof is not on the claimant to establish and ownership in himself, but on the plaintiff to show that the property belonged to the defendant, and was liable to condemnation." But this statement evidently had reference to the practice that existed prior to the Act of 1876, Ch. 285 (Code of 1912, Art. 9, sec. 47), under which the claimant intervened as a *defendant.* The appellant's petition was filed under section 47 of Article 9 of the Code of 1904, which provides, as does the Code of 1912: "Whenever an attachment or execution shall be levied upon any personal property, goods or chattels, which may be claimed by a person or corporation other than the defendant in such attachment or execution, such person or corporation may file a petition, under oath, with the Court before whom such attachment or execution is returnable, setting forth clearly the character and origin of his, her or its claim to the property so levied upon, and thereupon it shall be the duty of the clerk to docket a suit against both the plaintiff and defendant in such attachment or execution and issue a summons directed to said plaintiff and defendant, giving notice of such claim and returnable to the next succeeding rule day or term of said Court. If such claimant shall establish the validity of his, her or its claim to said property, costs shall be

awarded to said claimant, and said claimant shall also be entitled to recover damages in such suit for the wrong and injury done to him, her or it by reason of such seizure and detention of his, her or its property." Under this section the debtor and the attaching creditor are made *defendants* in the claimant's suit, and the claimant, in addition to asserting his claim, is permitted to recover damages for the wrongful seizure and detention of his property, and, while in the cases of *Turner* v. *Little,* 59 Md. 199, and *Albert* v. *Freas, supra,* the point was not directly raised or considered, in the lower Court the trial of those cases proceeded upon the theory that the burden was on the claimant to establish his claim to the property involved, and the questions presented on appeal were disposed of accordingly. With that burden on the plaintiff, the claimant, the case at bar could not, at the instance of the plaintiff, have been withdrawn from the jury, for although the evidence adduced by the plaintiff was practically uncontradicted, the rule in this State is that the Court can not assume the existence of facts and take away from the jury the finding of the same. In the case of *Calvert Bank* v. *Katz,* 102 Md. 56, the Court said: "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of the evidence to satisfy the jury, or the circumstance that it was all on one side, does not authorize the Court to direct the jury that it proves a fact." In this case the title of the plaintiff was put in issue by the pleadings, and it was for the jury to pass upon the evidence offered in support of the plaintiff's contention. *McCosker* v. *Banks,* 84 Md. 292; *Consolidated Ry. Co.* v. *O'Dea,* 91 Md. 506; *Thomas on Prayers,* sec. 32A.

Because of the errors in overruling the demurrer to the second plea and granting the defendant's prayer, the judgment of the Court below must be reversed the case remanded.

*Judgment reversed, with costs and a new trial awarded.*