BENTONVILLE TAYLOR *v.* WALTER B. WEBB, ADMINIS-
TRATOR, ETC.

1. BILL IN CHANCERY TO SET ASIDE FRAUDULENT CONVEYANCE. *Parties.*
   *Heirs and administrator of fraudulent grantor.*
   A judgment debtor, after return of *nulla bona*, is not a necessary party
   to a bill by the creditor to vacate a fraudulent conveyance; and, if
   the debtor dies before the bill is filed, it is not necessary to revive the
   judgment, or to make the administrator or heirs of the fraudulent
   grantor parties to the bill.

2. SAME. *Hearsay. Declarations of grantor.*
   Declarations made by a fraudulent grantor after he has parted with the
   land are incompetent, in a chancery proceeding by a judgment cred-
   itor to set aside the fraudulent conveyance, as against a sub-vendee,
   unless made in his presence.

3. SAME. *Original judgment, how far assailable.*
   Irregularities in the service of process in the proceedings in the Circuit
   Court, upon which the judgment is founded, cannot be availed of by
   the defendant in a chancery suit by the judgment creditor to set aside
   a fraudulent conveyance of the debtor's land.

4. SAME. *Pleading. Answer. Admission.*
   Where the bill alleges that the judgments on which the suit is founded
   were regularly enrolled, and the answer, while it styles it an alleged
   and pretended enrolment, intends to assail it only for assumed inva-
   lidities in the judgments, the enrolment is sufficiently admitted, and
   need not be proved.

5. SAME. *Supreme Court. Practice on reversal.*
   Where, on appeal from a decree for the complainant, made on final
   hearing of a bill to set aside a fraudulent conveyance, the evidence
   establishes the fraudulent character of the conveyance, but notice to
   a sub-vendee is shown only by hearsay, the court, finding strongly
   suspicious circumstances, on reversing the decree, remands the case,
   with leave to take testimony in relation to the sub-vendee's notice of
   the fraud or his knowledge that the judgment creditor deemed the
   conveyance fraudulent, and intended to attack it.

APPEAL from the Chancery Court of Covington County.
Hon. T. R. GOWAN, Chancellor.

This bill in chancery, filed by Walter B. Webb, adminis-
trator of Thomas Allen, against A. J. Carter and Bentonville

Taylor, to subject certain land acquired by A. J. Carter from one Marcus E. Carter, and conveyed by the former to Bentonville Taylor, to two judgments, recovered against Marcus E. Carter in his lifetime, in the Circuit Court of Covington County, alleged that the judgments were regularly enrolled on April 2, 1867, and remain unreversed, unsatisfied and wholly unpaid, notwithstanding the issuance of execution on the same, the sheriff having returned, in both cases, "no property found."

After the demurrers of the defendants were overruled, they answered. The answer of Taylor stated that he was a *bona fide* purchaser for value of said land in Covington County, making his deed an exhibit, and setting out the description, including the county and State in the body of his answer. This respondent's answer further alleged " that the declarations in the suits at law referred to in the bill of complaint were filed on the 27th day of August, 1866, and the summons in each case was issued on the 28th of the same month; and the sheriff's returns show that neither summons was executed before Sept. 4, 1866. The sheriff's return in each case is as follows: ' *Executed on M. E. Carter, by leaving a true copy thereof at his usual place of abode, with Mrs. E. O. Carter, above the age of sixteen years, and then and there being one of his family.* ARCHY FAIRLY, *Shff. Sept.* 4, 1866.' The said Circuit Court had not jurisdiction over the person of said M. E. Carter to render said judgments, and the alleged and pretended enrolment of said judgments and said pretended executions, and the sheriff's alleged returns, and said pretended judgments founded thereon, are void."

It appeared from the records of the two suits in the Circuit Court of Covington County, filed as exhibits to the answer, that the summons in each was returnable, and the court met, on the fourth Monday, the 24th day of September, 1866; that the returns were as stated in the answer; and that Marcus E. Carter, having failed to appear, and having made default, the judgments were rendered against him on March 26, 1867.

The remaining facts appear in the opinion of the court.

From a decree for the complainant, the defendant, Bentonville Taylor, appeals.

*Bentonville Taylor*, the appellant, *pro se*, argued the case orally, and filed three briefs, contending,

1. The appellant insists that if the lands were fraudulently conveyed, in the lifetime of Marcus E. Carter, by him, they cannot be sold under a judgment rendered against him while living; for an execution must be issued against a person *in esse*, and it cannot be directed to the sheriff of any county in an unknown world. A judgment, after death of the judgment debtor, is inoperative, because it cannot be enforced against *him*, for the court has lost jurisdiction over him. Hence the judgment should have been revived against his administrator. *Fowler* v. *McCartney*, 27 Miss. 509; *Davis* v. *Helm*, 3 S. & M. 17. In case the prayer of the bill be granted, can the court issue an execution against the *dead* for the sale of the land?

2. The conveyance to A. J. Carter, in consideration of the extinguishment of debts due him from his vendor, was *bona fide*. *Upshaw* v. *Hargrove*, 6 S. & M. 286; *Love* v. *Taylor*, 26 Miss. 567; *Hinds* v. *Pugh*, 48 Miss. 268; *Shaw* v. *Millsaps*, 50 Miss. 380; *Gaylords* v. *Kelshaw*, 1 Wall. 81; *Lovejoy* v. *Julian*, 17 Md. 526.

3. Carter's answer to the bill is sworn to, and positively denies all the charges of fraud, while the bill is not sworn to. Hence it requires the testimony of two witnesses, or of one witness and corroborating circumstances, to overthrow the answer. § 1087, Code of 1871. Taylor's answer denying the fraud, and also denying notice of fraud in the conveyance to A. J. Carter, is also sworn to, and the above rule applies. No witness has testified that Taylor had such notice; nor does any circumstance proved show that he had such notice.

4. The declarations of Marcus E. Carter to the witnesses Cook, Broom and Hathorn were not made in Taylor's presence or with his knowledge. Taylor is not charged with having been a confederate of Marcus E. Carter; nor were these declarations made during the existence of any confederacy to which Taylor was a party. *Browning* v. *State*, 30 Miss. 656; *Lynes* v. *State*, 36 Miss. 617; *Street* v. *State*, 43 Miss. 1.

5. The bill fails to charge that the judgment was enrolled in

*Covington County*, where the lands were situated, and hence no lien is shown. The *lien* alone gives jurisdiction. *Hilzheim* v. *Drane*, 10 S. & M. 556; *Comstock* v. *Rayford*, 12 S. & M. 369; *Farned* v. *Harris*, 11 S. & M. 366; *Brown* v. *Bank of Mississippi*, 31 Miss. 454.

*Harris & George*, on the same side.

Referring the court to the very elaborate brief filed by Mr. Taylor, we subjoin the following : —

1. The judgment against M. E. Carter was void as to Carter. The service was constructive, by leaving a copy with a member of his family. It is not shown that this person was *white*, or that Carter could not be found. The judgment in such a case is not voidable only, but absolutely void. When the law substitutes constructive for actual notice, the return must show the existence of the state of facts authorizing constructive notice. Constructive notice, *ex vi termini*, means that from certain facts existing or being done, the law will hold the party as if he had notice. He may or may not have actual notice, but the facts are *construed* to bind him as if he had notice. It is universal in such a case that notice is not construed to have been given, unless all the acts requisite to it be done exactly as the law requires.

2. It is well settled that a purchaser who extinguishes a debt in the purchase is a purchaser for value. See *Upshaw* v. *Hargrove*, 6 S. & M. 286; *Love* v. *Taylor*, 26 Miss. 567; *Perkins* v. *Swank*, 43 Miss. 349; *Hinds* v. *Pugh*, 48 Miss. 268.

3. The admissions and declarations of the vendor are not admissible when made after the sale. *Farmers' Bank* v. *Douglass*, 11 S. & M. 469. They are inadmissible even when a conspiracy or confederacy has been established, when made after the sale has been completed. The declarations of confederates are only admissible against each other, when made pending the enterprise and before its consummation. This rule is universal in civil and criminal cases. *Browning* v. *State*, 30 Miss. 656; *Lynes* v. *State*, 36 Miss. 617; *Street* v. *State*, 43 Miss. 1. They are admissible only on the ground that they are verbal acts, made to carry out the enterprise. Even if made in proper time, they are inadmissible, if they be the mere relation of a past transaction.

*Chrisman & Thompson* and *T. S. Ford*, for the appellee.

1. As to the insolvency of Carter's estate, and its effect on the case at bar, see *Vasser* v. *Henderson*, 40 Miss. 519.

2. The successive transfers have not removed the property beyond the operation of the judgment lien. *Mitchell* v. *Wood*, 47 Miss. 231.

3. It is not necessary to revive the judgment against Carter's administrator and heirs. Whatever defence could be made to a *scire facias* can be made here. *Ferguson* v. *Crowson*, 25 Miss. 430 ; *Fowler* v. *McCartney*, 27 Miss. 509.

4. As to the land being in Marion County, and the judgment consequently not being a lien on it, see acts of Dec. 22, 1814 (Stat. p. 29), Dig. Miss. Ter. p. 113, Feb. 5, 1819 (Acts 1818–19, p. 22), Feb. 12, 1819 (Acts 1818–19, p. 122), Feb. 1, 1825 (Acts 1825, p. 48), and Code 1857, p. 51. These acts show the land to be in Covington. The allegation of the bill that the lands are in Covington is expressly admitted in the answer. One of the defendants lives in Covington County. No such question can be raised for the first time in this court. Authorities cited in George's Dig. p. 375.

5. The testimony of Broom, objected to, was competent. Carter's declarations *ante litem motem*, explaining an act which took its character from his, Carter's, intentions and design, are admissible. *Baker* v. *Kelly*, 41 Miss. 696. They were introduced to show the motive which actuated Carter in selling the land. His declarations are so connected with the hypothesis they are intended to support that they are inseparable concomitants of the fact in controversy. The good or bad faith of Carter is put in issue by the pleadings. Are we not allowed to prove his *mala fides* by his declarations? That Mr. Taylor, the lawyer whom he intended to consult, is now a defendant, does not change the rule. The case of *Lynes* v. *State*, 36 Miss. 617, cited by the appellants, has no application. In that case Hightower's declarations were excluded, because Hightower was not on trial. 1 Greenl. Evid. § 100 *et seq.* Here Carter is on trial, and the only issue in fact is as to his good or bad faith. The other defendants are not innocent purchasers. Strike Broom's testimony from the record, and the decree would have to be the same as with it. The fraud is abundantly

proved. No bill of exceptions was filed to the order refusing to suppress the testimony. 26 Miss. 78; 4 How. (Miss.) 370; 33 Miss. 211; 5 How. (Miss.) 658; 2 S. & M. 572; 9 S. & M. 34.

CHALMERS, J., delivered the opinion of the court.

Walter B. Webb, administrator of Thomas Allen, deceased, having recovered two judgments against Marcus E. Carter, in his lifetime, filed this bill to subject to their satisfaction certain real estate, alleged to have been fraudulently conveyed by the debtor, first to his son, A. J. Carter, and then by the latter to Bentonville Taylor. The bill alleged that the conveyance to the son, A. J. Carter, was colorable and without consideration, and that Taylor had knowledge of this at and before the date of his purchase from the son. The bill showing on its face that the judgments had been recovered in the lifetime of Marcus E. Carter, a demurrer was interposed, on the ground that it was not shown that they had been revived against his administrator and heirs, nor were either the administrator or heirs made defendants to the bill.

Was it necessary that the judgments should be revived ? This depends on the question, whether the administrator or heirs were necessary parties to the bill, since, if neither were necessary parties, a failure to revive against them is immaterial. Undoubtedly, in any proceeding to reach legal assets, the holder of the legal title must be before the court; and, therefore, in such cases there must be a revivor, and even in seeking to subject equitable assets, the legal holder of such assets must be made a party. But why should a court concern itself about parties who have neither legal title nor equitable interest in the subject-matter of the litigation ? It will be conceded, that if it is not necessary to join the fraudulent grantor while living, it cannot be essential to make his representatives parties after his death, since it is manifest that if the creditor may ignore the one he may omit the others.

Is a judgment debtor, after return of *nulla bona*, a necessary party to a proceeding instituted by the creditor to vacate an alleged fraudulent conveyance ? Mr. Bump, in his excellent work on Fraudulent Conveyances (1st ed.), 522,

states that the fraudulent grantor during his life, and his administrator after death, are necessary parties, but that his heirs are not; and in support of these positions cites a large number of cases, many of which undoubtedly bear out his statement, but a majority of which, perhaps, only declare that the fraudulent grantor or his administrator are *proper* parties. We have examined these adjudications with care, and especially the decision of the Supreme Court of the United States in the case of *Gaylords* v. *Kelshaw*, 1 Wall. 81, because to the rulings of that distinguished tribunal we are always desirous of conforming our own, in order to render the body of American law symmetrical and harmonious. We regret that we find it impossible to do so in the present case.

There is a wide distinction between proper parties and necessary parties in equity proceedings. The former term frequently embraces all who have any connection with the subject-matter of the litigation; the latter includes only those whose interests are to be affected by the decree sought. No matter how intimate the connection of a party may be with the subject-matter in hand, he is never a necessary party where he is vested neither with the legal title nor with any beneficial interest which can be affected by the litigation. Under such circumstances, the complainant is at liberty to join him or not, at pleasure; and whichever course he may take, the bill is subject neither to plea of misjoinder, nor to demurrer for nonjoinder of parties. Tested by this rule, the correctness of which, we think, will not be disputed, upon what principle is it that, after judgment and return of *nulla bona*, a fraudulent grantor, or his administrator or heirs, are deemed necessary parties to a bill to vacate a fraudulent conveyance? The grant is not only good against them, but it is absolutely unassailable by them. Under no circumstances can they be permitted to attack it, or to claim any interest in the property conveyed. When a court of equity, penetrating through the fraud, uncovers the property, and subjects it to the assaults of the creditor, it declares the fraudulent grantee a trustee for his benefit, of so much of it only as is necessary to satisfy the demands against the grantor, and leaves the grantee in the undisturbed enjoyment of the remainder.

What interest, then, can the grantor or his representatives have in the litigation? If it is said that they might be able to show payment or plead the bar of the Statute of Limitations, the obvious reply is twofold: first, that as to the property sought to be reached, it is immaterial to them whether the judgment is a subsisting debt or not, since they have no interest in the property to be subjected; and, second, that the grantee, who is alone interested in it, may plead, in exoneration of it, any thing that constitutes a defence to the judgment.

It is said in some of the cases that the fraudulent grantor should be joined, because it is his conduct that is to be investigated; but the object of the proceeding is to reach property, not character, and however valuable the latter may be in another forum, and a different form of action, it is not perceived how the assailment of it can entitle the party to be heard in a proceeding like this. The truth is, that it is a proceeding *in rem;* and while the complainant may, if he chooses to do so, join as defendants all who are connected with the property or the transactions to be investigated, he is only compelled to join those in whom the legal title rests, or those who have a beneficial interest to be affected. In consonance with this reasoning are *Smith* v. *Grim,* 26 Penn. St. 95; *Dockray* v. *Mason,* 48 Me. 178; *Merry* v. *Fremon,* 44 Mo. 518; *Cornell* v. *Radway,* 22 Wis. 260. The question was alluded to, as to the heirs of the grantor, but left open in *Shaw* v. *Millsaps,* 50 Miss. 380. In the case at bar it does not appear that there was any administrator, or any estate to be administered. We conclude that it was not necessary to have revived the judgments, nor to have made the administrator or heirs of Marcus E. Carter parties, and that the demurrer was properly overruled.

On final hearing, the Chancellor held that the sale from M. E. Carter to A. J. Carter was fraudulent. This holding was, we think, abundantly warranted by the evidence. He also held that Taylor had notice of the fraud, and therefore rendered a decree subjecting the land. Much incompetent testimony was admitted to establish Taylor's knowledge of the fraud, consisting of the declarations of Marcus E. Carter, made after he had parted with the land, not in Taylor's pres-

ence, and other testimony of a hearsay character. Motions to suppress these depositions, or so much of them as was of this description, were erroneously overruled by the Chancellor. Leaving out of view this illegal testimony, we cannot say that there were sufficient grounds for holding that Taylor knew of the fraudulent character of the conveyance, and yet there is not wanting competent proof of circumstances which seem to point strongly in that direction. It is shown, for instance, that he took the mortgage out of which his fee-simple title afterwards grew, upon the very day that Webb's execution was levied on the land, as he well knew. His deed of conveyance was acquired two years afterwards, when, as he says, he had been assured by Webb's attorney (now deceased), that all idea of there being fraud in the matter had been given up, and all intention of subjecting the land to the judgments had been abandoned; but he fails to explain why he took the original mortgage under such circumstances, and his action in so doing certainly calls for explanation. We think that, while the decree was not warranted by the competent testimony adduced, there was enough shown to warrant us in giving the complainant an opportunity to supply, if possible, his secondary by primary evidence.

The objections urged against the service of process in the proceedings in the Circuit Court, upon which the judgments are founded, cannot be heard in a collateral proceeding.

It was not necessary to show an enrolment of the judgments. That was sufficiently admitted by the answers. While it is there styled " an alleged and pretended enrolment," it sufficiently appears that by this it was only intended to assail it for assumed invalidities in the judgments, which did not exist.

The decree will be reversed and cause remanded, with leave to both parties to take testimony in relation to Taylor's notice of the fraud, or his knowledge that the complainant deemed it fraudulent, and intended to attack it.