## WEIGHTMAN

*v.*

## THE WASHINGTON CRITIC CO.

---

CORPORATIONS; STOCK AND BONDHOLDERS, RIGHTS OF; NOTICE; INNOCENT PURCHASERS; HUSBAND AND WIFE; AGENCY; EQUITY PRACTICE; NECESSARY PARTIES; CREDITOR'S BILLS.

1. Where a number of stockholders of a corporation which had become financially involved and had ceased operations formed a new corporation, which took possession permissively of the property of the old corporation and conveyed the same in trust for the benefit of the bondholders of the new corporation, such transfer cannot affect the rights of a judgment creditor of the old corporation.

2. In such a case possession of the property by the new corporation with the consent of the older corporation is not sufficient to show title in the new corporation.

3. Where H. sold personal property to W., who received it and gave a deed of trust for the purchase price, and W. thereupon conveyed it to a corporation in which he was interested and the corporation immediately, and before the deed of trust was recorded, conveyed the property in trust to secure certain bondholders, it was *held* that the rights of the bondholders without notice of the deed of trust to H. were superior to his claims.

4. In such a case, the wife of W. who purchased some of the bonds with her own money and sent the purchase money directly to the secretary and treasurer of the corporation, is not chargeable with notice of the deed of trust to H., by the knowledge of her husband, where he was not her agent and did not represent her in the transaction.

5. But where, in such a case, certain stock was purchased by the husband in his own name with money advanced by his wife, who seemingly intended the investment as a gift to her husband, and subsequently bonds to cover the amount of the stock were issued to a trustee in trust for the wife, she cannot be regarded as an innocent holder of the bonds.

6. In such event, even if she were to be regarded as the real owner of the stock and its proceeds, the knowledge of her husband, who acted as her agent, would charge her with notice of any prior liens against the corporate property.

7. An objection for want of necessary parties, taken on a motion for a rehearing after a final hearing on appeal, will not be allowed to prevail except in a very strong case, and when it is clearly shown that a necessary and indispensable party is wanting.

8. *Quære*, whether in a suit to set aside a conveyance as fraudulent, the alleged fraudulent grantor is a necessary party.

9. It is incumbent upon a defendant in a judgment creditor's suit, who claims that the complainant has not exhausted his remedies at law, in that certain attachment proceedings taken on the judgment have not been determined, so to show affirmatively.

No. 86. Submitted April 5, 1894. Decided October 1, 1894.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, overruling exceptions to a report of the auditor, confirming the same and directing the distribution of funds in accordance therewith. The case was appealed to the General Term and was there pending upon the creation of this court, to which it was transferred by operation of the act of February 9, 1893. *Reversed.*

The COURT in its opinion stated the case as follows:

The controversy in this cause is between certain creditors of the corporation known as the Evening Critic Company, and certain others of its successors, the Washington Critic Company, concerning the distribution of certain assest in the hands of the latter corporation.

The original bill in this cause was filed May 14, 1891, in the Supreme Court of the District, by Richard Weightman against the Washington Critic Company. He claimed to be the assignee of a judgment for the sum of $8,828.73 recovered against said corporation July 9, 1890, by Stilson

Hutchins, which judgment is entitled to a credit of $7,000 as of November 10, 1890. For the remainder execution issued May 8, 1891, and was returned *nulla bona* the same day.

It is alleged that on January 26, 1891, the corporation executed a trust deed to Warner and Edmonston, trustees, conveying one share in the stock of the United Press and the franchise of said United Press for the city of Washington, a Hoe press and other appliances and personal property in the possession of the corporation; also all personal property that might be afterwards acquired in lieu of, or in addition to, said property. The purpose of the trust was to secure an issue of 200 bonds, of the face value of $100 each, of which 127 had been issued and disposed of before the issuance of execution. The defendant was alleged to be indebted to Smith, Dixon & Co. in a judgment rendered May 2, 1891, for $772.72 as well as to others, and to have become insolvent.

The prayer was for the appointment of a receiver and for a decree winding up the affairs of the corporation.

On the same day an order was made appointing Henry E. Davis receiver, who immediately qualified and entered upon the discharge of his duties. On June 29, 1891, in obedience to an order of the court, the receiver sold the property in his hands, in two parcels. The press, Brown folder and belongings, upon which Stilson Hutchins claims a special lien, as will be seen hereafter, were sold separately for $1,000; the remaining property, of which the "United Press" franchise was of chief value, was sold for $10,500. This sale was confirmed without objection, and the matters in controversy concern the distribution of the net proceeds.

On May 27, 1891, Stilson Hutchins filed a petition in intervention claiming a balance for rent due him as owner of the building occupied by the corporation for an unexpired term. This claim was rejected by the auditor and is not now in controversy. The petition alleged that Hutchins

was the owner of the press and Brown folder, which he sold, among other things, to Richard Weightman on November 12, 1890.

Weightman gave to Hutchins four notes for $5,000 each and to secure them conveyed the press, folder and belongings to Greer and Cleary, trustees, providing for sale in case of default of payment, etc., and allowing retention of possession by the grantor. This deed of trust was not recorded until January 31, 1891, three days after the record of the trust to secure the bonds issued by the corporation, to which Weightman had, shortly after his purchase, conveyed the property. Of the 127 bonds outstanding about $3,900 face value are held or controlled by Samuel W. Maddox, president of the Washington Critic Company, who waived all claim to priority of lien as against the lien of Hutchins. Priority is claimed by the owners of the remaining bonds representing a face value of about $8,800. All the bondholders claim a first lien upon the remainder of the fund in the hands of the receiver.

The Evening Critic Company was incorporated in the District of Columbia, June 4, 1881, and amended March 22, 1882, for the purpose of publishing a newspaper in the city of Washington. This corporation published a paper for several years, during which it acquired some type and appliances of little value, and the franchise and stock in the "United Press," the value of which was estimated at from $15,000 to $25,000. This corporation became involved and its active organization and operation ceased. Certain of its shareholders or promoters took out articles of incorporation for its successor, under the name of the Washington Critic Company, on October 19, 1887. The new corporation took possession of the office, books, property and appliances of the Evening Critic Company, including the "United Press" franchise, and continued the publication of the Critic newspaper.

There is no evidence to show that the purchase, or con-

tract for the purchase, of this property was ever made by the old corporation with the new one. The new corporation becoming embarrassed, issued the bonds in January, 1891, as above stated.

The Evening Critic Company was indebted to George Hill, Jr., for certain sums of money in the years 1884 and 1885, to recover which he instituted an action at law, in April, 1885, in the Supreme Court of the District of Columbia, and recovered a judgment December 7, 1887, for $2,502.49, with interest from certain prior dates at six and seven per cent. per annnm. February 28, 1888, *fi. fa.* issued upon this judgment and was returned April 19, 1888, *nulla bona.* Attachments had also issued without results. The defendant had no property other than that taken possession of by the Washington Critic Company.

On July 25, 1885, one Mornay D. Helm, who was an original incorporator of the Evening Critic Company, filed a bill, also in the District Supreme Court, against said company, the Washington Critic Company, Hallett Kilbourn, Stilson Hutchins and others, to subject the property of the Evening Critic Company to certain debts due complainant and others. George Hill, Jr., intervened in this cause July 28, 1885, setting out his pending suit for debt, &c. This bill was dismissed by complainant on the 17th day of February, 1887, though it is claimed by Hill as still depending as to his claim.

On June 5, 1889, said Hill filed an independent bill, numbered 11,842, against Hutchins, Kilbourn, the Evening Critic Company, the Washington Critic Company, and Thos. J. Brady, to establish his lien upon the property of the Evening Critic Company, and to compel payment of his judgment aforesaid. This suit was depending at the time of the filing of Weightman's bill herein, and is still upon the docket and undetermined. On September 12, 1891, the said Hill filed his petition as intervenor in this cause, in which he alleged the facts above stated with respect to

the indebtedness claimed, suits instituted, etc.  He further claimed his lien upon the property of the Evening Critic Company, which he alleged was held in bad faith by the Washington Critic Company, and with full notice of his rights, claims, etc.  He asks that he be permitted to intervene as a complainant, and that he be decreed to have a lien upon the proceeds of the sale prior to the claims of any and all persons, and for an order of payment of his judgment in full.

October 29, 1891, the court having confirmed the receiver's report of sale, ordered a reference to the auditor for a statement of the account of the receiver and report upon the several claims upon the fund, etc.

The auditor filed an elaborate report on February 24, 1892, covering the points of reference.  Such of his conclusions as were excepted to and are now in controversy are briefly stated as follows : 1. That the property of the Evening Critic Company passed lawfully into the possession of the Washington Critic Company, and not in fraud of the rights of creditors.  2. That the mortgage to secure the bonds of the Washington Critic Company was regularly made, and the 127 bonds actually issued constitute a prior lien upon all the property described therein.  3. That of the holders of these bonds, Annie L. Weightman ($6,400) and William B. Webb ($400) had no notice of the existence of the Hutchins trust, and their lien takes precedence over his upon the proceeds of the press, folder and belongings.

The net proceeds of the sale in the hands of the receiver were stated to be $8,567.05.   The net proceeds of the sale of the press, folder, etc., $858.03, were recommended to be distributed as follows: To Annie L. Weightman, on account of $5,000 of bonds held by her, $337.81 ; to Samuel Maddox, in trust for Annie L. Weightman, on account of $2,400 of bonds held in trust for her, $162.15 ; to William B. Webb, on account of $400 of bonds held by him, $27.02 ; to Stilson Hutchins, on account of note of Richard Weight-

man, the remainder of $331.05. The remainder of the fund
was recommended to be distributed among the bondholders
as follows: To J. T. Arms, on account of $3,300 of bonds,
$2,003.13; George E. Emmons, on account of $500 of
bonds, $303.50; Annie L. Weightman, on account of $5,000
of bonds, $3,035.05; Samuel Maddox, in trust for Annie L.
Weightman, on account of $2,400 of bonds, $1,456.82;
William B. Webb, on account of $400 of bonds, $242.80;
George A. McIlhenny, on account of $500 of bonds, $303.50;
Samuel Maddox, on account of $600 of bonds, $364.02.

Appeal has been duly prosecuted from the decree over-
ruling exceptions to and confirming the auditor's report.

*Mr. A. S. Worthington* for Stilson Hutchins.

*Mr. W. D. Davidge* and *Mr. E. H. Thomas* for George
Hill, Jr.

*Mr. Henry E. Davis* and *Mr. Samuel Maddox* for the bond-
holders.

*Mr. Maddox* also filed a brief for Annie L. Weightman.

Mr. Justice SHEPARD delivered the opinion of the Court:

The first question for determination is the right of George
Hill, jr., to have satisfaction of his judgment against the
Evening Critic Company out of the proceeds of the sale of
the press, franchise and other property of the said corpora-
tion, which passed into the possession of the Washington
Critic Company, and was by it mortgaged to secure the
bonds issued by it, and now in the possession of other
claimants of the fund. The auditor erred in his conclu-
sions with respect to this claim. Hill was a *bona fide* credi-
tor of the Evening Critic Company, and though it cannot
be said that the property of that corporation constituted a
trust fund charged specifically with the payment of his
debt, yet he had an equitable right to subject it to the satis-
faction of his debt as against all other persons than *bona
fide* creditors and purchasers. *Hollins* v. *Brierfield Coal &*

*Iron Co.,* 150 U. S. 371; *Curran* v. *Arkansas,* 15 How. 304; *Wabash, etc., Rwy. Co.* v. *Ham,* 114 U. S. 594; *M. & W. Rwy. Co.* v. *Branch,* 59 Ala. 139.

Under the evidence in this case it is unnecessary to discuss or determine the rights growing out of Hill's intervention in the Helm suit, which was dismissed by the original complainant, or of his pending creditor's bill in No. 11,842. The effect of filing the creditor's bill, with service of process, would ordinarily be to create a lien in equity upon the property of the judgment debtor. *Miller* v. *Sherry,* 2 Wall. 237; *Freedman's Sav. & Trust Co.* v. *Earle,* 110 U. S. 710. And the due prosecution of such suit would be a *lis pendens,* affecting with notice all subsequent purchasers or incumbrancers. *Murray* v. *Ballou,* 1 Johns. Ch. 566; *County of Warren* v. *Marcy,* 97 U. S. 96.

There is, however, no competent evidence to show that the Washington Critic Company succeeded to the title of the Evening Critic Company in the property which came into its possession by purchase or otherwise. It is probable that the shareholders of the old corporation were among the promoters of the new, and considered the property as belonging to them personally and following them into the new one. If so, this was a mistaken view of their legal relations as shareholders to the corporation and its property. The corporation was a distinct entity. It was not even dissolved. And upon dissolution the claims of shareholders would be subordinate to those of creditors. The best that can be said of the claim of title by the new company, in the light of the evidence, is that it came into and held the possession of this personal property by the permission of the old company. This did not confer title. " Possession is *prima facie* evidence of title to personal property against everybody but one proving property; that is, against anyone but the right owner." *Magee* v. *Scott,* 9 Cush. 148. The property was plainly proved to have belonged to the Evening Critic Company. This, with proof of his judgment unsatisfied,

established Hill's right to subject it thereto. The burden of proof then shifted to those claiming under the new company to show the passage of title to it in some proper manner. Its possession with the consent of the elder corporation was not sufficient. It was incumbent upon them to show something in addition to defeat the rights of creditors. Having no title to the property, the Washington Critic Company could not by the conveyance in trust create one in the trustees for the benefit of innocent bondholders even. *Magee* v. *Scott*, 9 Cush. 148; *Levi* v. *Booth*, 58 Md. 305; *Tuttle* v. *Campbell*, 74 Mich. 652; *Velsian* v. *Lewis*, 15 Oregon, 539.

It follows, then, that in the distribution of the proceeds of the sale—save as to the separate sale of the press, folder and belongings—the judgment of George Hill, Jr., is entitled to preference over all the claimants. As affecting Hill's right some stress was laid on the argument that certain of the proceeds of the sale arose from the type and certain belongings of the Washington Critic Company, and that it does not appear that, if sold separately, the property subject to his lien would have produced enough to pay off his judgment and costs of suit. It is contended that he should have intervened before sale and asked, as did the intervenor Hutchins, for a separate sale of the several items of property.

Unquestionably this would have been the safer and better course, but the intervenor was not compelled to adopt it. He filed his petition in intervention subsequent to the sale. This made it his duty to show, at least with reasonable certainty, that the property subject to his lien must necessarily have sold for enough to discharge his debt. This, we think, has been done. It is very clear from the evidence that, saving the Press franchise, the property sold had little or no value. This franchise of the United Press was shown to be very valuable, and it is clear that the proceeds of the sale were almost entirely realized from this value. The surplus

after paying the judgment of Hill will, we think, be largely more than the value of the other property sold with it.

The auditor has, in our opinion, fallen into a slight error in his conclusions with respect to the priority of the lien of certain of the bonds to the lien of Hutchins upon the proceeds of the separate sale of the press, folder, etc. There is no pretence that William B. Webb had any notice of the Hutchins liens and the bonds held by him unquestionably precede the lien of Hutchins for their proportionate share of said proceeds.

The same may be said of the lien of the $5,000 of bonds held by Mrs. Weightman. It is clear that she had no actual knowledge of the existence of the Hutchins lien, but the attempt is made to affect her with the knowledge of her husband. Hutchins sold the property to her husband, who received it and executed the trust deed. He then conveyed to the corporation, which in turn mortgaged it, together with other property, to secure the issue of bonds. Her husband, it is true, suggested the investment in the bonds, but he was not her agent, and did not represent her in the transaction. She paid for the bonds with money of her own, upon the representation, in connection with the certificate of the title company to the same effect that the corporation's title to all the property was perfect. She sent the money directly to the secretary and treasurer, who executed the bonds payable to her. They were delivered to the husband, who at once sent them to her. She had not instructed the delivery to him. These acts are not sufficient to constitute him her agent to the extent that she may be bound by his knowledge. The mere relation of husband and wife cannot authorize the imputation of his knowledge to her. It has been held that where a conveyance of land was made to a husband and wife as joint tenants, she paying her share of the purchase money out of her separate estate, without knowledge of the existence of a prior unrecorded lien, she could not be charged with notice by reason of the knowl-

4 Ct. App.—10

edge of her husband, he not having been her agent in the transaction. Snyder v. Sponable, 1 Hill (N. Y.), 567 ; S. C. 7 Id. 427.

We cannot agree, however, with the auditor in holding that the $2,400 of bonds held by Maddox as trustee for Mrs. Weightman have the same standing in equity as the others. When Weightman made his deal with Hutchins, he purchased certain stock of the Washington Critic Company. The money was advanced by Mrs. Weightman ; but the stock was issued to and in the name of her husband. She said in her testimony with respect to this issue of stock, that she did not care to have it in her name; that "it was money he had made and given to me three years ago, and so I put it back in his name." Twenty-six shares of this stock were sold, presumably by her husband, though by whom does not appear in the evidence, and of the proceeds, $2,400, were deposited to the credit of the company as a temporary loan. When the bonds were ready to issue, twenty-four of them for $100 each were filed out in the name of Richard Weightman or bearer. After being signed by the treasurer these bonds were delivered to Mr. Maddox, the president of the company, who signed them and retained them in his possession. Knowing that the stock had been purchased with Mrs. Weightman's money, Mr. Maddox, after the appointment of the receiver, advised Weightman to make a transfer of the bonds to himself in trust for Mrs. Weightman. It is evident from Mrs. Weightman's own statement, as well as from the circumstances of the case, that she did not invest in the stock for her own use and benefit, as she did in the $5,000 of bonds. It would seem that she intended the investment as a gift to her husband. If either a gift or a loan of the money to him she cannot be regarded as an innocent holder of the bonds. Even if she is to be regarded as the real owner of the stock and its proceeds, it is very clear that in the transaction the husband acted as her agent to such an extent as

to affect her with his own knowledge of the Hutchins lien.

For the reasons given, *the decree will be reversed and the cause remanded to the Supreme Court of the District of Columbia for further proceedings, and for the passing of a final decree in conformity with this opinion. It is so ordered.*

On October 13, 1894, *Mr. Davis, Mr. Worthington,* and *Mr. Maddox,* for the bondholders, filed a motion for a rehearing, and also a motion for a modification of the decree and mandate so as to provide that the Supreme Court of the District of Columbia holding a special term in equity should be authorized and instructed to direct and provide that a sum sufficient to pay the amount of the claim of the appellant in this case, George Hill, Jr., should be held by Henry E. Davis, receiver, to abide the result of the case entitled *George Hill, Jr.,* v. *Stilson Hutchins et al.,* being Equity Cause No. 11,842, in the Supreme Court of the District of Columbia, to the end that if that suit should be finally determined against said George Hill, Jr., said sum should be distributed in accordance with the decree of the court below in this case.

*Mr. Davidge* and *Mr. Thomas* contested the motion.

Mr. Justice SHEPARD, on November 20, 1894, delivered the opinion of the Court:

Since our decision of this appeal, two motions have been submitted in the interest of the bondholders who have been postponed in the distribution of the fund until after the satisfaction of the debt of the appellant. One is a formal motion for rehearing. The other is substantially to the same effect, as it prays a modification of our decree, so that the court below " shall be authorized and instructed to direct and provide that a sum sufficient to pay the amount of the claim of the appellant, George Hill, Jr., shall be held by the receiver in the above entitled cause to abide the

result of the case entitled *George Hill, Jr.,* v. *Stilson Hutchins et al.,* No. 11,842, in the Supreme Court of the District of Columbia, to the end that if the said suit shall be finally determined against said George Hill, Jr., said sum shall be distributed in accordance with the decree of the court below in this cause."

To grant this motion would be in effect to remand the cause for another trial; for, though not to be actually retried itself, its final decree would await, and necessarily depend upon, the trial of the main issue in cause No. 11,842, wherein it is also involved. The motion is extraordinary, and to prevail must stand upon reasons which we are compelled to recognize as sound and controlling. The ground set out in the motion is: "The Evening Critic Publishing Company, not being a party to this suit and not being brought before the court in any way in this cause, the court is without jurisdiction to make a decree against it, or to direct that the fund in controversy shall be paid to its alleged creditor, George Hill, Jr." It is certain that no decree could be entered against the absent corporation, and equally certain that none has been, unless the order of distribution of the fund in the registry of the court necessarily has that effect. If that corporation has any real or substantial interest in the disposition of the fund, it is not, nor could it be, precluded from its assertion as long as the fund can be followed; and if necessary to make this perfectly clear, our decree could be amended without going to the length asked by this motion.

It remains, then, to consider, whether the substantial rights of that corporation are so involved in this controversy as to be necessarily affected by our decree. It will be remembered that the original bill in this cause was filed in the name of Richard Weightman, who was the principal stockholder, as well as the judgment creditor (through assignment from Stilson Hutchins) of the original defendant, the Washington Critic Company. This application for the

appointment of a receiver was discussed and determined upon at a meeting of the stockholders, and counsel was then immediately retained for the purpose. The bill was promptly prepared, and, with an answer admitting its allegations, was submitted to one of the justices of the Supreme Court of the District, and on the same day the attorney who prepared the bill was duly appointed as receiver. The property delivered into the possession of the receiver, as belonging to the defendant, embraced and chiefly consisted of all that the Evening Critic Publishing Company had formerly owned and possessed. This company was confessedly insolvent. It had ceased to have officers or organization, and had permitted its property to pass into the possession and use of the Washington Critic Company in some manner and for some purpose not explained in the testimony contained in this record. In referring to this change of possession, in the opinion before delivered, we said : " It is probable that the shareholders of the old corporation were among the promoters of the new, and considered the property as belonging to them personally and following them into the new one." This suggestion or surmise is really outside the case and had nothing to do with our conclusion therein ; but it is not without foundation, as is claimed by the appellees, and in the light of their motion is not now altogether irrelevant, as we shall see. The Evening Critic Publishing Company was incorporated in 1881, and among its promoters appears E. H. Mack. Thos. J. Brady became subsequently the holder of a controlling interest, if not of all, of the stock, which he in turn sold to Hallet Kilbourn. One share was placed in the name of R. H. Sylvester to render him eligible, and he was then made secretary and Kilbourn became president. In this purchase Kilbourn executed an obligation to Brady, to which he also signed the name of Stilson Hutchins, undertaking to hold Brady harmless from all indebtedness of the corporation, which was represented by Brady not to exceed $9,000. In No. 11,842, George Hill, Jr.;

filed a bill against the Evening Critic Publishing Company, the Evening Post Company, the Washington Critic, the Washington Critic Company, Hallet Kilbourn, Stilson Hutchins and Thos. J. Brady, seeking to have a decree against the Evening Critic Company's property as subject to his lien, and also seeking to recover against Kilbourn and Hutchins on the guaranty given by them to Brady. Brady's answer supplemented Hill's bill so far as the enforcement of the obligation was concerned. Hutchins and Kilbourn each answered under oath denying Kilbourn's authority to sign Hutchins's name to the obligation. These issues, together with that raised on the claim of Hill to subject the property which passed into the hands of the Washington Critic Company, remained undetermined.

The Washington Critic Company was organized in October, 1887. Quite a number of persons joined in the application for the charter, but it does not appear who became actual stockholders at that time. Be this as it may, Kilbourn, Sylvester, and E. H. Mack were named as trustees, and the first became president and the second secretary. Weightman afterwards bought from Hutchins 138 shares of stock that were in the name of Kilbourn. Mr. Maddox, who became president after an effort at reorganization in 1890, says that "Hutchins was a large stockholder in the concern, and the contract between him and Weightman was for the purchase of 138 shares." He further said: "Mr. Hutchins, when I went down there to take control of the board, seemed really to be the Washington Critic Company." Hutchins denied being a stockholder, but admitted that he held Kilbourn's stock as collateral security, and did not deny that the proceeds of its sale went to him. The office of the concern was also in his building. Thomas H. Heath, who for a short time was business manager of the old corporation, described its property, and, in answer to the inquiry, what became of it, said: "That property was transferred to Mr. Hallet Kilbourn and Mr. Sylvester, repre-

senting the company. I forget what was the title of the company then." As we have seen, these gentlemen were president and secretary respectively, of the old corporation, and took the same positions with its successor. To the question, "Whom did they succeed?" Heath answered, "The Critic Company. I am not certain, they changed their names so much. The company was represented by John Brady; he owned a controlling interest in it." When asked, "if they continued that company?" he said, "I cannot say; I think they continued a company, but I think they made some sort of change in the paper." In No. 11,842, Sylvester made oath to the answer of the new company as secretary, and to that of the old company as "late secretary." The same solicitor appeared for both, as well as for Kilbourn and Hutchins, and the answers are all in accord. These facts and circumstances would seem to warrant the inference that the same men controlled both companies, at the time that one succeeded the other, and continued so to do, at least until the reorganization in 1890; and that, in the absence of other evidence, they probably treated the property as their own and carried it with them from one into the other. Owning all the stock they might easily have done so, and there would be nobody in a situation to complain or interfere, except creditors.

In the answer of the Evening Critic Publishing Company, in No. 11,842, sworn to by the "late secretary," it is alleged that, "It sold in good faith its plant, good will and property to the Washington Critic Company, and thereafter ceased business, and has since had nothing whatsoever to do with the publication of said paper or with the business of its vendee." As that suit was pending when this was begun, it is now urged that Hill should have brought the parties in this case, and the property itself, into that one by appropriate pleadings. It is not clear to us that this could have been readily done. But grant that it may have been, still we see no reason why Hill may not have elected, as he

did, to intervene in this cause and pursue the fund herein.

There are some parties to case No. 11,842 who had no possible interest in this cause, and some issues which had no possible relevancy to or connection with the issues herein. In fact, it is not at all clear to our minds that the bill in that cause is not subject to objection for multifariousness, as it is. All the parties to that suit who had any interest in this fund were before the court in this case, unless it be the Evening Critic Publishing Company. There was neither demurrer, plea, answer, nor suggestion in the court below, either before or at the hearing, that this corporation was a necessary party to this cause. It is now claimed that the tenth paragraph of the answer of the Washington Critic Company to Hill's petition presents the point. The claim is unfounded. There is nothing in this paragraph but a reference to the pending litigation in No. 11,842, and an allegation that petitioner Hill " is without right to any such relief as is prayed for in and by his said petition until cause No. 11,842 is judicially determined." It is true we find, as claimed in the argument in support of the motion, that the concluding paragraph of the brief on behalf of the bondholders in this court reads as follows: " Moreover, the Evening Critic Publishing Company is not a party to either this cause or the petition of intervention, nor is it alleged that said company has been wound up, nor is any excuse given for not making it a party. In view of this fact, it is submitted that the petitioner Hill has no standing here."

The case was submitted upon oral argument, in which counsel representing each party were heard under an extension of time granted for the purpose, and yet not one intimation was given that this old corporation was a necessary or indispensable party to the cause, without whose presence this court could not proceed to decree. It is not unnatural, under the circumstances, that this paragraph of the brief should have passed unnoticed, or if noticed, that it should have been regarded as without significance. It

must be that counsel then attached no importance to the point whatever. We cannot believe that they then regarded the presence of this moribund corporation as absolutely necessary, and yet withheld the point for use only in the event of an adverse decision.

The suggestion of want of necessary parties, at this stage of a case, must be regarded in a very different light from that where it is made in a proper manner in the preliminary stages. "A person may be a necessary party within the rule requiring all persons interested to be made parties, although the proper decree may be made as to the subject matter of the litigation in his absence, if the defendant makes no objection. And, in such a case, if the defendant neglects to make the objection by plea, answer or demurrer of the want of proper parties, who are only necessary to protect him from further litigation, the court, in its discretion, may refuse to sustain the objection at the hearing, or to require the cause to stand over to add new parties in that stage of the suit." *Dios* v. *Burchard,* 10 Paige, 447, 459. The rule is more strongly stated by the Supreme Court of the United States: "It ought to be observed here, preliminarily," said the court, "as a matter of practice, that although an objection for want of proper parties may be taken at the hearing, yet the objection ought not to prevail upon the final hearing upon appeal, except in very strong cases, and when the court perceives that a necessary and indispensable party is wanting. The objection should be taken at an earlier stage in the proceedings by which great delay and expense would be avoided. The general rule as to parties undoubtedly is, that when a bill is brought for relief, all persons materially interested in the subject of the suit ought to be made parties, either as plaintiffs or defendants, in order to prevent a multiplicity of suits, and that there be a complete and final decree between all parties interested. But this is a rule established for the convenient administration of

justice and is subject to many exceptions, and is more or less a matter of discretion in the court and ought to be restricted to parties whose interest is involved in the issue and to be affected by the decree. The relief granted will always be so modified as not to affect the interests of others." *Mechanics' Bank* v. *Seton*, 1 Pet., 306.

There is no arbitrary or invariable rule with respect to parties to a bill that is applicable to all cases. It " depends in great measure upon the object, as well as the subject, of the bill, the relief sought, the privity between the parties, and the manner in which their several interests may have arisen." *Crook* v. *Brown*, 11 Md. 158, 171. The rule " being introduced for the purposes of justice, is susceptible of considerable modification for the promotion of these purposes." *Mallow* v. *Hinde*, 12 Wheat. 197.

When the objection is made for the first time at the hearing, and, *a fortiori* upon appeal and after hearing there, as in this case, there arises a marked difference and distinction between those usually called necessary parties and those who may be called indispensable parties. These latter are said to be " persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." *Shields* v. *Barrow*, 17 How. 130; *Barney* v. *Balto. City*, 6 Wall. 280, 284.

The same idea has been expressed by saying that in such case the rights of those not before the court must be " inseparably connected with the claim of the parties in the suit." *Story* v. *Livingston*, 13 Pet. 359, 375; *Williams* v. *Bankhead*, 19 Wall. 563, 571. In this last case it is to be remarked, as affecting its real bearing on this case, that the objection for want of a necessary party was duly made in the answer and overruled in the court below.

There is much force in the suggestion of counsel for Hill,

that in the attitude of this case, it was not at all necessary, even if raised *in limine*, to make the Evening Critic Publishing Company a party to Hill's petition in intervention. The original complainant proceeded against the property and brought it into the control of the court. Neither he nor the defendant noticed the old corporation, for the good reason that they denied any title in it to the property or fund. The proceeding was in the nature of one *in rem.*, and might be regarded as requiring no bringing in of new parties by one claiming a share in the distribution. It is not necessary, however, to decide this point.

There is nothing in this record to show that the Evening Critic Publishing Company has such an interest in the subject matter of this suit that it must necessarily be determined, or which leaves the controversy in such condition that its final determination, in so far as that corporation is concerned, is wholly inconsistent with equity and good conscience. As we have before said, the Evening Critic Company became insolvent and ceased operations; its organization lapsed; its controlling shareholders organized its successor, and became its officers and managers; the remnant of its property followed these officers into the succeeding corporation in some manner not explained in the record, and which it was incumbent upon those claiming under them to explain. The old corporation became moribund, and all that it lacked of complete dissolution was a formal declaration thereof by some tribunal of competent jurisdiction. It abandoned the property, permitted its successor to take charge of it and use it, and has never laid claim thereto since. In the answer sworn to by its " late secretary," and filed in No. 11,842, it was made to renounce all claim, as we have seen, in favor of its successor. True, this answer cannot be considered as binding the Evening Critic Publishing Company, though introduced into this case in proving the record in No. 11,842; but in the determination of the point under consideration, in connection with the other

circumstances that have been mentioned, it may be considered, as was a like answer in *Vattier* v. *Hinde*, 7 Pet. 264, respecting which it was said: "In the case at bar, Abram Garrison has no claim, legal or equitable, to the property in contest. No decree could be made against him, and he has filed his answer disclaiming all interest in the cause. It is true that his answer is not evidence as an answer, since the court had no jurisdiction as to him. But in a question concerning himself only; in a question whether the court will abstain from exercising jurisdiction between parties, in some of whom the whole title in law or equity is vested, lest his interests should be affected, his disclaimer of all interest, appearing in the form in which it appears, cannot be disregarded."

It is manifest that the attempt here now made to reopen the issue as to the rightful claim of Hill to priority in the distribution of the funds is not in the interest of the Evening Critic Publishing Company, nor for its benefit. It comes from those who have held the property, claiming the same and its proceeds adversely to that corporation and its creditors. In the administration of justice, equity looks through the forms of things into their substance, and a court of equity would not be worthy of the name if it ignored these considerations and disregarded the circumstances which have been adverted to elsewhere.

In the view we have taken of this case as regards the time and manner of raising the question of the want of necessary parties, it becomes unnecessary to pass upon the question that has been discussed, as to whether, considering this as a bill by George Hill, Jr., as a judgment creditor, to set aside a conveyance by the Evening Critic Publishing Company, as made to defraud creditors, the said corporation was a necessary party thereto. There is some conflict in the authorities on this point. The old rule was that the fraudulent grantor is a necessary party; many courts of high authority have taken a different view. *Potter* v. *Phillips*, 44 Iowa, 353 ;

*Taylor* v. *Webb*, 54 Miss. 36. See also *Smith* v. *Grim*, 26 Pa. St. 95 ; *Docray* v. *Mason*, 48 Me. 178 ; *Merry* v. *Fremon*, 44 Mo. 518 ; *Paul* v. *City of Kenosha*, 22 Wis. 256 ; *Campbell* v. *Jones*, 25 Minn. 155 ; Beach, Mod. Eq. Jur. Sec. 72.

The rule in the courts of the United States may be regarded as unsettled. It is not determined by the decision in *Gaylords* v. *Kelshaw*, 1 Wall. 81. In New York the old rule prevails, but an exception has been recognized in the case of a bill by a creditor to establish and enforce the lien of a judgment upon particular property described. *Fox* v. *Moyer*, 54 N. Y. 130 ; *Miller* v. *Hall*, 70 N. Y. 250.

There remains one other and minor point to be considered. It is urged in support of the motions that George Hill, Jr., has not exhausted his remedies at law, because the record shows that he had caused attachments to issue upon his judgment, the results of which had not been settled. Hill's petition in this cause, after alleging recovery of judgment, issue of *fi fa.* and return *nulla bona* thereon, says that " he had several attachments issued out of said court upon said judgment." Again, he says that he " made all possible effort by means of attachment and other process of the court against the property, effects, credits," &c., of the defendant. Later, however, in describing his bill and proceedings in No. 11,842, he says that in consequence thereof, " no further levy was made nor means taken to make the money at law." The answer of the Washington Critic Company in said cause No. 11,842 also alleges that proceedings had been taken by attachment to collect the judgment at law, which were then (1889) pending, &c. Upon this record it is claimed that Hill should be made to pursue his attachments, and allowed to claim satisfaction of only so much of his judgment as may remain after crediting the proceeds of the attachments thereon.

The remark in the opinion that these attachments had been without result occurs in the statement of the facts of the case and we think is fairly justified. These attach-

ments occupied no attention in the trial of this cause. No defense was based upon them. They were not introduced or referred to in the evidence. Hill's petition expressly says that all legal remedies had been abandoned for the remedy in equity sought in No. 11,842. He was also examined as a witness, and testified without contradiction that he had never received anything whatsoever in payment or satisfaction of his judgment, or any part thereof. If there was anything substantial in these attachment proceedings, or anything fairly promising results that might afford an equitable foundation for consideration on behalf of the other claimants of the fund in hand, it was incumbent upon them to show it.

No sufficient reason having been shown why either motion ught to be granted, *they will be overruled; and it is so ordered.*